Marlborough *v.* Sisson and others.

## MARLBOROUGH *vs.* SISSON AND OTHERS.

In an action on the case, by the town of M, for illegally transporting a pauper into said town, the defendants offered, in evidence, certain bills in the hand-writing of one of the selectmen of said town, that were found deposited among important papers and files of said town, and purporting, on their face, to be for small supplies of food and fuel, sold at various times, by said selectman, to the town. Held, that such bills were admissible, as conducing to prove, not only that they were received by the town, but also, from the character and quantities of the supplies, that they were furnished, from time to time, by the town, for the support of some of its paupers; and as the name of the person, for whom the articles were furnished, was not mentioned in the bills, that they were also admissible for the purpose of rebutting evidence offered by the plaintiff, by which he claimed to have proved that, during the time to which such bills related, the town was in the practice of entering the names of all paupers for whom it furnished support, in its books or papers.

In such action, the plaintiff offered in evidence, the lists of the town of W, in the state of Vermont, for the purpose of showing that said pauper had been charged with the taxes of that town, (during the two years that he resided there,) in connection with evidence that, after those lists were made, they were, in conformity with the laws of said state, duly returned, that taxes were granted and assessed thereon, by the town, during those years, and warrants for their collection duly issued to the collector, that said pauper, upon a demand of payment, made by the collector, paid said taxes to him, without dissent, and that the collector paid the taxes, so collected, into the treasury of the town, and that the town had ever since retained the same, without objection, or demand of repayment, by said pauper; but said lists did not contain a particular enumeration of the polls and taxable estate of the inhabitants of said town, as was required by the laws of said state, which informality was known to said pauper. Held, that such lists were admissible, for the purpose of showing that said pauper had been charged with taxes of said town, during the two years that he resided there, and, therefore, acquired a settlement therein, under the laws of said state.

A NEW trial having been granted in this cause, (*ante* p. 44,) it again came on for trial, before the jury, at the term of the superior court, holden in September, 1854. The main question made upon the trial, related to the settlement of Samuel Ingraham. It was admitted and proved that said Ingraham's original settlement was in Marlborough;

that he was born there in the year 1774, and resided there until he was twenty-one years of age; that in the year 1797, he removed with his family to the town of Weybridge, in the state of Vermont, and resided there for the period of three years, then next following; that during that period there were in force in said state, the following regulations relating to the assessment and collection of taxes in Vermont:

" Sec. 1.   It is hereby enacted by the general assembly of the state of Vermont, that every person who shall purchase a freehold estate of the value of one hundred dollars, and shall have *bona fide* paid therefor, and shall actually occupy and improve the same for the term of one whole year, or shall actually and *bona fide*, have rented and occupied a tenement of the yearly value of twenty dollars and upwards, for the term of two whole years, and actually paid such rent; and every person who shall inhabit in any town or place within this state, and shall, for himself, or on his own account, have executed any public office or charge in such town or place during one whole year, or shall *have been charged with and paid his or her share of the public rates or taxes of such town or place, for the space of two years;* and every person who shall have been bound an apprentice or servant by indenture, or by any deed, contract or writing not indented, and shall, in consequence of such binding, have served a term not less than three years, next preceding the time of such apprentice's arriving at the age of twenty-one years, if a male, or at the age of eighteen years if a female, in such town or place, shall be deemed and adjudged to have obtained a legal settlement in such town or place.   And every other healthy, able-bodied person coming and residing within this state, and being of peaceable behavior, shall be deemed and adjudged to be legally settled in the town or place in which he or she shall have first resided, for the space of one whole year." [Vermont Stat., vol. i., pp. 383, 384.   Passed March 31, 1797.]

" Sec. 14.   That the inhabitants of each town in this state,

Marlborough *v.* Sisson and others.

qualified to vote as aforesaid, at any meeting duly and legally warned and holden in such town, may grant and vote such sum or sums of money as they shall judge necessary, for the maintenance of the poor, for laying out and repairing the highways, for building and repairing bridges, and for all other incidental charges, within said town, to be assessed on the polls and rateable estates in the same town, as the law directs." [Vermont Stat., vol. i., p. 414. Passed Feb. 28, 1797.]

" SEC. 1. That every inhabitant of this state except such as are, or shall by law be exempted, shall contribute to the public charges and expenses thereof, and shall be compelled thereto, if need be, by distress.

" SEC. 11. That all taxes and rates which shall be granted by the general assembly, and all other rates and taxes of counties, towns, societies or other communities, which are, or shall by law be enabled to grant taxes, shall be assessed by the same rule, that is to say, in proportion to the general list of the polls and rateable estates from time to time given in, and made according to law, except where some other rule of granting and levying rates, taxes or assessments, is or shall by law be provided." [Vermont Stat., vol. i., p. 433. Passed Oct. 17, 1797.]

" SEC. 3. It shall be the duty of the inhabitants of each town in this state, respectively, at their annual meeting, duly warned and holden as aforesaid by a majority of votes, to choose a moderator to govern said meeting, (and the town clerk, or one of the selectmen, shall preside in such meeting until the moderator be chosen.) They then shall proceed by a majority of votes to choose a town clerk or register, (who shall, if present, immediately take the oath of office, but if absent, a clerk, *pro tem.*, shall be appointed by nomination and duly sworn,) three or more persons, not exceeding five, to be selectmen, to superintend the prudential affairs of the

town, who are hereby made and declared to be overseers of the poor of such town, unless the town shall appoint other overseers in their stead, which they are hereafter empowered to do, a town treasurer, *three or more listers, not exceeding five*, one or two constables, collectors of town rates or taxes, one or more grand jurors, surveyors of highways, fence-viewers, one pound-keeper to each district in said town, sealers of leather and sealers of weights and measures, all of which officers shall be freeholders and inhabitants of said town, and every other officer which the laws of this state may, or shall direct." [Vermont. Stat., vol. i., pp. 407, 308. Passed Feb. 28, 1796.]

" Sec. 13. That the listers of the several towns shall return a general list, in the form as is hereinbefore prescribed, to the general assembly, on or before the fifteenth day of October, annually, with a certificate from a justice of the peace or the town clerk of the same town, respectively certifying that they were duly sworn to a faithful discharge of their office and duty, previous to the 5th day of the preceding May. And the listers of every town who shall neglect to make return of such general list to the general assembly, as aforesaid, shall forfeit and pay to the treasury of this state the sum of seventeen dollars.

" Sec. 16. That the said listers shall, some time in the month of October, annually make out and deliver, a particular and fair list of the polls, estate, and property of the several inhabitants of their respective towns, certified under their hands to the town clerks of the several towns, taking their receipts for the same; on penalty, severally, of forfeiting and paying the sum of ten dollars to the treasury of such town." [Vermont Stat., vol. ii., p. 168. Passed.March 20, 1797.]

" Sec. 24. That the selectmen of the several towns in this state be, and are hereby authorized, empowered and required, reasonably to assess the polls and rateable estates within such towns, according to the rules and directions of law, their just

Marlborough *v.* Sisson and others.

and equal portion of all state, county, town and other taxes, which they may, by any law of this state, be authorized, empowered or required to assess." [Vermont Stat., vol. i., p. 418. Passed Feb. 28, 1797.].

The plaintiff claimed that, for two years of his residence in said Weybridge, said Ingraham was charged with and paid his share of the public rates and taxes of said town and place, and so acquired a settlement in said town of Weybridge, and lost his original settlement in said town of Marlborough. And in support of said claim, the plaintiff offered in evidence the sworn and duly authenticated copies of the general list of said town of Weybridge, in the years 1798 and 1799, which were as follows:

" Samuel Smith, . . . . . . . $162.50
David Goodale, . . . . . 164.25
Samuel Ingraham, . . . . . 59.25

and many other inhabitants of the town of Weybridge.

" Fourth grand list for the town of Weybridge for the year 1799.

" JAMES HEATON,
SILAS WRIGHT,
AMOS MARSH, } *Listers.*"
ZILLAR STICKNEY,
SIMEON DICKINSON,

" William Brewster, . . . . . $264.50
Clark Stone, . . . . . . 163.25
Samuel Ingraham, . . . . . 50.00

and many other inhabitants of the town of Weybridge.

" Grand list for the town of Weybridge, for the year 1798. To $8,364.66 cents.

" AMOS MARSH,
SIMEON DICKINSON,
ZILLAR STICKNEY, } *Listers.*"
SILAS WRIGHT,
JAMES HEATON,

Said lists were accompanied with an offer to prove, that the same were the general lists of said town; were made in

Marlborough *v.* Sisson and others.

conformity with the general use of the town of Weybridge, at that time; that the listers therein named, were duly chosen by the inhabitants of said town, and made return of said lists according to the law; that taxes were duly granted and assessed on said lists; that collectors were appointed, and warrants duly issued for the collection of the taxes assessed on said lists; that the collector of taxes in the said town of Weybridge, called on said Ingraham, in the years 1798 and 1799, and made demands of the taxes imposed on him, upon the aforesaid lists; that said Ingraham paid said taxes to said collector, without protest or dissent; that said collector paid the taxes so collected into the treasury of said Weybridge; that said Weybridge has ever since retained the same, without objection or demand of repayment by said Ingraham. The defendants objected to the introduction of said lists in evidence, on the ground that the same did not contain an enumeration of the polls and taxable estate of the inhabitants of said town. The court sustained said objection and rejected said lists.

It was further proved that said Ingraham returned to Marlborough in the year 1800; that from 1805 to 1812, while residing in various places, he received occasional relief and support from said town, and also from 1820 to 1850, while, residing in Hebron, Marlborough, Colchester and other places, he received from said Marlborough, like occasional relief and support, particularly at such times as he or any member of his family were sick. From 1812 to 1820, during which time he resided constantly in the town of Hebron, the plaintiff claimed, and offered evidence to prove, that he supported himself and family, without their becoming chargeable to said Hebron or Marlborough, and that during that time he neither neglected nor refused to pay any legal taxes imposed on him, and therefore the plaintiff claimed that if he had not gained a settlement in Weybridge, he had, by such residence in Hebron, gained a settlement in that town, and had thereby lost his original settlement in Marlborough.

This was denied by the defendants, who claimed and offered evidence to prove, that from 1812 to 1820, Ingraham was destitute of property, and unable to support himself and his family, and several times, received aid and support from said town of Marlborough. And in connection with other evidence tending to show his necessitous circumstances, and that said town of Marlborough both previously and subsequently to said times, had been in the habit of furnishing him with articles for his family, similar to those charged in certain bills of Roger Foot, (which were found among the files and papers of said town of Marlborough, and were accompanied with proof that, at the times, when said articles were charged by said Foot and said bills were rendered to the town, said Foot was a selectman of said Marlborough,) the defendants offered said bills in evidence, for the purpose of showing that some of the articles mentioned therein, were furnished by said Foot, selectman as aforesaid, for the use of said Ingraham or his family. To the introduction of said bills in evidence, the plaintiff objected, but the court overruled said objection, and admitted said bills, not however for the purpose of showing that said articles or any of them were furnished to said Ingraham's family, unless the jury should be of that opinion, from other evidence in the case, but to rebut a claim of the plaintiff, that during said period to which the said bills had relation, the town of Marlborough was in the practice of entering the names of all paupers, for whom it furnished support, on some of the books or papers of said town, and that there was no entry of the name of said Ingraham as a pauper for whom any support was rendered, during said time.

But the defendants offered no evidence other than the bills themselves, that said documents were in the hand-writing of said Foot, nor that the articles named therein were furnished by said Foot, nor that any of said articles were furnished tosaid Ingraham, nor that said bills had been paid by said Marlborough.

The jury, having rendered a verdict in favor of the defend-
ants, the plaintiff thereupon moved for a new trial, on the
ground that the court erred, in rejecting the testimony offered
by them, and in admitting the testimony offered by the
defendants.

*T. C. Perkins* and *R. D. Hubbard* for the plaintiff.

1. The bills of Foot, most favorably considered, were noth-
ing but the entry of a third person not under oath, and were
not admissible in evidence.   The original entries were on the
books of Foot, and were not proved to have been in his
hand-writing.   They were never paid by the town, nor in any
way recognized as a just bill against the town.

2. Even if these writings are evidence of the truth of the
contents, they did not conduce to the proof of the proposition
to be established, because there is nothing to show that the
supplies in question were furnished to a pauper.   If furnished
to a pauper, there is no evidence that it was done by author-
ity.   The proof is the other way.

3. The real question, as to the admissibility of the lists of
the town of Weybridge, is, were these papers admissible, in
connection with the other evidence offered, as conducing to
show that Ingraham was in fact charged with taxes?   The
only objection to this is, that items of property were not
enumerated.   The statute of Vermont merely requires that
he shall have been charged with, and paid his share of taxes.
The payment of the taxes in question is very different from
a mere volunteer payment to a person claiming to be col-
lector, when there is no vote of the town to lay taxes.   The
spirit of the whole section is in our favor.   The object of
the statute is to attract settlers by privileges offered, and
to afford facilities of gaining settlement.   The object is not
to be unfavorably restrained by technicalities.   The people
to whom this law is of most importance, would not be ex-
pected to understand, or investigate technicalities.

The principle of construction, claimed by the defendants,

if applied to other clauses of the same section, would lead to hardship and absurdity. The authorities to be cited by the defendants, are not necessarily opposed to us—they only show what is technically irregular, if objected to at the time.

*Bulkeley* and *W. D. Shipman* for the defendants.

1. In order to prove that the pauper in question gained a settlement in Vermont by the payment of taxes under the statutes of 1797, the plaintiff must show that such taxes were legally assessed. *Starksboro* v. *Hinesborough,* 13 Verm. R., 215. *Adam* v. *Litchfield,* 10 Conn. R., 127. *Middletown* v. *Berlin,* 18 Conn. R., 189.

2. It is essential to the legality of such assessment, that the kind of property embraced in the valuation of the assessors or listers should be specified in the list, and in this, as in other particulars, the statute must be strictly complied with. Statutes of Vermont, vol. i., 418. Statutes of Vermont, vol. ii., 160–168. *Howard* v. *Shumway,* 13 Verm. R., 358. *Thames Man'g Co.* v. *Lathrop,* 7 Conn. R., 550.

3. The paper, offered by the plaintiff to prove such assessment, was inadmissible for that purpose, because it was not made in compliance with the statutes of Vermont, and especially as it contained no specification whatever of the property, or estate of the inhabitants.

4. The bills, offered in evidence by the defendants, were properly received for the purpose stated in the motion.

STORRS, J. 1. We are of opinion that the bills of Foot were admissible for the purpose for which they were received on the trial. Those bills, having been found deposited among the important papers and files of the town of Marlborough, and purporting on their face to be for small supplies of food and fuel sold at various times by Foot to the town, conduced to prove, not only that they were received by the town, although they were unaccompanied with any other evidence that they were paid for by the town or furnished by Foot,

or that they were in his handwriting; but also, from the character and quantities of the articles, that they were furnished from time to time by the town for the support of some of its paupers. And as the name of the person for whom the articles were furnished was not mentioned in the bills, they were also admissible for the purpose of rebutting the evidence of the plaintiff, by which it was claimed to have been proved, that during the time to which said bills related, the town was in the practice of entering the names of all paupers for whom it furnished support on its books or papers. This evidence having been admitted only for these purposes, a new trial should not be granted on this ground.

2. The remaining question respects the admissibility of the lists of the town of Weybridge. It is the prevailing opinion of the court that those lists were, in connexion with the facts offered to be proved by the plaintiff, admissible for the purpose of shewing that Ingraham had been charged with the taxes of that town during the two years while he resided there, and that he therefore acquired a settlement therein. Those facts were, that after those lists were made, they were, in conformity with the laws of Vermont, duly returned; that taxes were granted and assessed thereon by the town during those years, and warrants for their collection duly issued to the collectors of those taxes; that Ingraham, upon a demand of payment thereof made by the collector, paid said taxes to him without protest or dissent, that the collector paid the taxes so collected into the treasury of the town, and that the town has ever since returned the same without objection or demand of repayment by Ingraham. The defendants objected to the introduction of these lists, on the ground that they did not contain a particular enumeration of the polls and taxable estate of the inhabitants of the town, as was required by the laws of Vermont, and that therefore Ingraham could not be deemed to have been charged with the taxes imposed on them.

We have no doubt that the want of such a particular

enumeration was a defect in these lists which would have justified Ingraham in refusing to pay those taxes, or entitled him to recover back the amount of them, if they had been collected of him against his consent. But it does not hence follow that a payment of them by him voluntarily, and with a knowledge of such defect, would not amount to a waiver of the defect, which would preclude him afterwards from disputing the validity of the lists. A list may be so defective in substance, either for want of jurisdiction in the listers, or on account of some substantial departure, in the mode of making it, from that prescribed by law, that it would be absolutely void, and consequently furnish no foundation for a tax laid upon it. In such case the list would be a nullity, and the defect therefore could not be waived. Or, on the other hand, there may be, in the form of a list, such an unsubstantial or unimportant deviation from the mode prescribed, that the defect would be deemed immaterial, in which case the defect would not invalidate the list, nor would it be voidable. It would produce intolerable mischief and inconvenience, if every merely literal or trifling mistake in the form of a list should be held to render it absolutely void to all intents and purposes, and the rights of those affected by the proceeding requires no such rigid and narrow rule. There is, also, in our opinion, a class of cases falling within neither of these descriptions, where the defect in the list does not render it absolutely void, and yet is not of an immaterial character, and where the person against whom it is made out may, at his option, avoid the tax laid on it, or waive the defect: and in the case of such a waiver he can not afterwards take advantage of the defect. It is not easy, nor do we deem it, in this case, necessary, to lay down, in terms, a rule by which it can, in all cases, be determined whether the defect is of such a kind that it renders the list void or only voidable. In the lists now in question, we are of opinion that the defect is of the latter description. The requirement, that the lists should contain a particular enu-

meration of polls and rateable estate, was introduced for the sole benefit of the owner of such estate. It was introduced as a check against the exercise of arbitrary power by the listers, and to enable the owner to take the necessary steps for a correction of the list, if it is erroneous. He only is interested in the fulfillment of that requirement, and if he is satisfied, there is no good reason why others should interpose to object to this list, for a want of this formality. As to him the maxim, *Quilibet potest renunciare juri pro se introducto,* would seem clearly to apply. To treat a list defective only in this particular as absolutely void, and therefore a nullity to all intents, when the owner of the property embraced in it is willing to forego this formal objection to it and to consider it as valid, is not required by any principle of policy or justice, nor, as we think, by any rule of law. The plaintiff offered to prove, in connexion with these lists, that Ingraham having knowledge of this informality in them, voluntarily paid to the collector the taxes assessed upon them, that the collector paid them into the treasury of the town of Weybridge, and that that town has ever since retained them without any claim or objection on the part of Ingraham. On these facts we are of opinion that he should be held to have been charged with the payment of those taxes, that they should be deemed to have been legally assessed, and that he thereby became a settled inhabitant of that town. Our decision in this case at the last term is not applicable to the question now before us. The only point then decided, was that, as all the requisites necessary to a legal assessment of taxes exist of record, they can be proved originally only by the records of the town as the best evidence, and therefore that the parol evidence which had been received in the first instance for the purpose of proving the assessment, was inadmissible. Nor do any of the other authorities cited by the defendants, conflict with the view which we have taken of this case. Those cases were decided on the ground that the listers had exceeded their jurisdiction, or that there was such

an irregularity or defect in their proceedings that they were absolutely void, or that there was no legal payment of the tax.

A new trial, therefore, is advised.

In this opinion the other judges concurred, except HIN-MAN, J., who was disqualified.

A new trial granted.