LOUIS CONZELMAN ET ALS. *vs.* CITY OF BRISTOL ET ALS.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued October 8th—decided December 1st, 1936.

*Epaphroditus Peck* and *William N. DeRosier,* for the appellants (plaintiffs).

*William H. Blodgett,* with whom were *Frederick W. Beach, Francis V. Tracy* and *Howard H. Hausman,* for the appellees (defendants).

MALTBIE, C. J.   The plaintiffs brought this action in their own behalf and that of about three hundred others, all residents and taxpayers of the defendant city, seeking a declaratory judgment that the entire grand list of property prepared by the assessors of the city for taxation purposes for the year 1935 was illegal and invalid and an injunction against the levy of a tax based upon it.   The complaint stated as the grounds upon which the grand list was claimed to be invalid that the assessments were made in attempted compliance with the provisions of § 1142 of the General Stat-

utes, which requires a revaluation of all the real estate in the municipality during each period of ten years, but that the provisions of the statute as to the manner in which this should be done were not complied with; that the valuations appearing in the grand list were not determined by the assessors but by the agents and representatives of a corporation engaged to assist them in performing their duties; and, if the complaint be broadly construed, that written notice was not given to taxpayers where increases in the valuation of personal property in their lists above those in the preceding grand list were made, as required by § 1141 of the General Statutes. At the trial the plaintiffs assailed the validity of the grand list on other grounds and these the trial court considered, pointing out, however, in certain instances that the matters under consideration were not included in the complaint. We shall confine our discussion to the grounds claimed as invalidating the grand list which are stated in the complaint. Even if other grounds were established, no judgment could properly have been based upon them. *Kane* v. *Kane,* 120 Conn. 184, 189, 180 Atl. 308.

Section 1142 provides as follows: "The assessors of all towns, consolidated towns and cities and consolidated towns and boroughs, unless otherwise provided, shall, during each period of ten years after February 1, 1930, view all of the real estate of their respective municipalities, and shall revalue the same for assessment, and in the performance of these duties at least two of the assessors shall act together, and all valuations shall be separately approved by a majority of the assessors." In 1925 the assessors of the city had made a revaluation of all taxable property in accordance with the provisions of this statute as then in force. General Statutes, 1918, § 1153. In 1934 the board of relief of the city petitioned the city council

to provide for a general revaluation, stating that this was required by the law to be made in 1935. Thereafter upon the same assumption action was taken by the city council and the board of finance which resulted in the employment of the Municipal Service Corporation, under an amendment to the city charter (21 Special Laws, p. 821), to install a scientific and equitable system for the assessment of property in the city and to furnish detailed information upon which to fix the valuations of lands and buildings, with appraisals to be determined by an equalization committee provided by the company but with a personnel approved by the board of finance and to be assisted by experts furnished by the company. The company agreed that it would make available appraisals for use in making up the grand list of 1935. It embarked upon the work and before January 31st, 1936, the last day upon which the grand list could be filed, had apparently done everything necessary to fulfil its contract as regards the preparation of that list. Two of the assessors, in 1935 and January, 1936, viewed about forty-eight hundred pieces of real estate in the city, evidently in a rather hurried manner; but they did not view all the real estate in the city. Not only the terms of the action taken by the city officials but also the way in which the work of preparing the assessments was done, unmistakably indicates that those officials proceeded upon the understanding that § 1142 required that, within each period of ten years, the grand list for one year must be based upon a revaluation in accordance with its terms made for the purpose of that particular list. Apparently other taxing officials in the State have proceeded upon the same assumption. *Slosberg* v. *Norwich*, 115 Conn. 578, 580, 162 Atl. 772; *Sullivan* v. *Willis*, 116 Conn. 9, 163 Atl. 407. But such a procedure is not required.

Section 1142 originated in 1917 in a law in all respects like the one now on the statute books, except that, in place of the words "during each period of ten years after February 1, 1930," it read: "On or before February 1, 1920, and during each period of ten years thereafter." Public Acts, 1917, Chap. 214. This is very different language than would have been employed had the Legislature intended that, in making up the assessment list in some one year during the period signified, the assessors should view all the real estate in the municipality and revalue it. In contrast to the terms of the statute are certain amendments to the charter of New Haven which provided for a general revaluation of property in that city to be made by the board of assessors; the valuations were to be made as of October 1st, 1894; the time in which the report of the assessors revaluing the property was to be filed, originally set for 1898, was later extended to 1900; and it was expressly provided that the assessment list made next after the filing of the report should be based upon it. 12 Special Laws, pp. 578, 1180; 13 Special Laws, p. 175. The legislative intent as expressed in the statute is that at least once in every period of ten years every piece of real estate in the municipality should be viewed and revalued, but it is not required that this be done as to all properties in the same year. It is of course desirable, where it is possible, to complete a revaluation in one year so that the values of all properties going into the grand list next prepared may be based upon that revaluation, for in this way all values will be determined by the use of the same method. If the work must be spread over more than one year care should be taken that inequalities do not result from the use of one method in valuing certain properties and another method in valuing other properties. Such a re-

sult might be avoided somewhat as was done in the special act amending the New Haven charter previously referred to, by using the values resulting from the revaluation only when the work has been completed and the value of all property can go into the list of a certain year as determined upon the basis of that revaluation. That the assessors did not, for the purpose of preparing the grand list now before us, view all the real estate in the city or that they attempted, as the plaintiffs claim, rather a formal than a reasonably adequate survey of the properties they viewed, cannot of itself render invalid the present assessment. That they and the other officials of the city were mistaken as to the intent embodied in the law cannot change its proper meaning; and however far the assessors may have fallen short at this time of full compliance with the statute, they still have left some years of the decade in which they can fully and adequately view and revalue all the real estate of the city.

During 1935 the agents of the Service Company made a general survey of the real estate in the city and accumulated a large amount of data concerning it. The assessors kept thoroughly in touch with the work done by the company and learned its methods. The company, working through a committee of real estate men of the city, made up a schedule of unit land values with fixed front foot values in the thickly settled districts and acreage values in the rural districts. The assessors considered these unit values, approved some and altered others, and finally adopted as their own the figures so approved or altered. The company also, after exhaustive investigation of reproduction costs in the city, arrived at unit valuations of various types of construction, which were submitted to the assessors and, upon the basis of those figures, the assessors, relying largely upon the judgment of one of

their number, an experienced building contractor, adopted a table of such unit valuations. The unit values were applied to each taxpayer's lands and buildings under rules approved by the assessors and the value of each property so determined was entered upon a card under the name of the taxpayer. The representatives of the company also entered upon the card the measurements of every building in the city, which had been made by it.

Late in November, 1935, the cards prepared by the company began to come in to the assessors' office. From then to the end of January, 1936, the assessors sat as a board on every business day. They sat around a table and each taxpayer's card was taken by one of the assessors and checked by him. They had all been in office for a period of years and were familiar with most of the property in the city. If in checking over any card a valuation thereon appeared to be out of line with the unit value as agreed upon or with the general knowledge the particular assessor had of the specific property, the assessor handling the card would discuss that valuation with the other two assessors. This occurred in the case of a very large proportion of the taxpayers' cards and changes were made in the valuation of the property of some seven hundred taxpayers out of a total of about six thousand. In some instances, also, taxpayers called the attention of the assessors or the company to mistakes in classification or size of the property. Whatever changes were made were approved by the board of assessors. In assessing the various pieces of property they used the system formulated by the company and adopted by them and checked the results thereby obtained with their own knowledge of the various properties. Where a valuation had been passed upon by an individual assessor

or in case of doubt by the whole board that value was entered upon the taxpayer's list as his assessment.

The trial court has further found that, under the system of unit valuation and rules adopted by the board, valuations followed as a matter of clerical figuring from the formulae and basic values. The assessors were always fully aware that it was their duty to make the assessments upon the property of the city and that the function of the committee was merely to aid and assist them in arriving at the valuations; nor did any officer or agent of the company believe or do anything to indicate to anyone that he thought that he or the company had the power to make the assessments. In using the data and information collected and tabulated by the company and following the rules suggested by the company, the assessors did so only in so far as their own judgment dictated that they should. The assessments finally made and the abstract thereof signed and sworn to by the assessors were the acts of the assessors in the exercise of their own judgment rather than that of the company.

If the conclusion last stated stands, the fact that the assessors availed themselves of the assistance of the Service Company in arriving at the valuations they finally adopted does not invalidate the assessment. *Cheney* v. *Essex*, 83 Conn. 493, 499, 76 Atl. 1098. In the case of a very large proportion of the properties in the city the matter was discussed and the valuation determined by the assessors as a board. It is true that the valuations placed upon a portion of the property, left indefinite in the finding, were not actually fixed by the assessors acting as a board after a consideration of the particular properties. They had, however, in the exercise of their own judgment adopted certain unit valuations and rules for applying them to specific properties and, at least in the absence of special cir-

cumstances requiring that they be varied, the valuations followed as a matter of clerical calculation. A valuation so determined was none the less an assessment made by the assessors even though they did not themselves make the necessary calculations, for that would be but a ministerial act. That there might be situations where the application of these values and rules would not result in a correct valuation because of peculiar circumstances, is apparently true. But if it is, the only fault which could be found with the work of the assessors is that, in the case of an indeterminate number of assessments, the question whether there might be such circumstances was not passed upon by all the assessors. The objection of the plaintiffs, then, comes down to this, that, had each card been subjected to the scrutiny of all the assessors, other instances of special circumstances making not wholly applicable the formulae and rules of valuation adopted by them might have been discovered.

It is not always easy to draw the line between those failures in the performance of their full duty by assessors which will invalidate an entire assessment and those which are available only to the individual taxpayer whose property is incorrectly valued. There probably never was a grand list where with reference to certain properties included the assessors did not fail in the strict performance of their duty. To invalidate the entire grand list of a municipality is an act fraught with very serious consequences. A breach of duty by the assessors may be of such a nature as necessarily to affect the entire grand list, such as a failure to obey a mandatory statutory requirement. *Thames Mfg. Co.* v. *Lathrop*, 7 Conn. 550; *Hartford* v. *Poindexter*, 84 Conn. 121, 130, 79 Atl. 79. On the other hand, an error which affects only the valuation of the property of a particular taxpayer can be adequately remedied

by an appeal by him to the board of relief. In order to justify the invalidation of an entire grand list, errors in the method of valuation of individual properties must be such that the levy of a tax upon the grand list would be likely to produce a substantial injustice to the taxpayers of the community as a whole. See *Marlborough* v. *Sisson*, 23 Conn. 401, 411; *Monroe* v. *New Canaan*, 43 Conn. 309, 312; *Dover* v. *Maine Water Co.*, 90 Me. 180, 181, 38 Atl. 101; *Williams* v. *School District No. 1*, 38 Mass. (21 Pick.) 75, 81; *Watson* v. *Inhabitants of Princeton*, 45 Mass. (4 Met.) 599, 601. In the case before us there is nothing to indicate that in any instance there were in fact special circumstances affecting the application of the formulae and rules adopted by the assessors in the valuation of particular property except as regards those valuations in fact passed upon by the assessors as a board. This is a very different situation from that we were considering in *Middletown* v. *Berlin*, 18 Conn. 189, 197, where it appeared that the assessments were made by the assessors each acting individually as to the property in a certain district and the assessments were never approved by the assessors acting as a board. We cannot find in the method used by the assessors in finally determining the valuation of the property in the city adequate ground for adjudging the entire grand list to be invalid. The appropriate remedy was by appeal to the board of relief by any taxpayer whose property was erroneously assessed as a result of that method.

The final ground claimed as invalidating the assessment which we shall consider is that the assessors failed to comply with the provision of § 1141 of the General Statutes, requiring them to give written notice of any increase in the valuation of personal property over that stated in the list filed with them by the tax-

payer or in the grand list of the preceding year. The giving of such a notice is plainly a provision for the protection of the individual taxpayer the valuation of whose property is in question. *Whittelsey* v. *Clinton*, 14 Conn. 72, 76; *Comstock* v. *Waterford*, 85 Conn. 6, 7, 81 Atl. 1059; *Sioux City & Pacific Railroad* v. *Washington County*, 3 Neb. 30, 43. Failure to give these notices would not invalidate the grand list as a whole.

There is no error.

In this opinion the other judges concurred.