CONNECTICUT RURAL ROADS IMPROVEMENT ASSOCIATION ET ALS. *v.* ROBERT A. HURLEY, COMMISSIONER OF PUBLIC WORKS ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued January 7th—decided February 1st, 1938.

*Charles J. McLaughlin,* Attorney General, and *Dennis P. O'Connor,* Deputy Attorney General, for the appellants (defendants).

*Ernest L. Averill,* with whom was *William P. Averill,* for the appellees (plaintiffs).

HINMAN, J. The issue upon the present appeal is the efficacy of the defendant's demurrer, which was overruled by the Superior Court. The allegations of the substituted complaint are in substance as follows: On and prior to April 28th, 1937, the state highway commissioner, under the provisions of the General Statutes, had and now has the power to lay out, alter, construct or reconstruct, maintain or repair, widen or grade, any highway whenever in his opinion the interests of the State require, exclusive jurisdiction over all highways laid out, constructed, reconstructed or maintained by him, and the power to expend all sums appropriated under the provisions of the statutes relating to state roads to be expended in the construction of state-aid roads and bridges, and is charged with the duty of expending, under his direction, all receipts of the commissioner of motor vehicles, exclusive of certain specified expenses, for the construction, reconstruction and maintenance of state roads and bridges, in addition to any sums appropriated by the General Assembly for such purposes. On April 28th, 1937, the General Assembly enacted Chapter 126 of the Public Acts of 1937 (1937 Supplement, § 540d) entitled "An Act establishing a Department of Public Works," under which the defendant Hurley was duly appointed as commissioner of public works. As such commissioner he claims sole jurisdiction over the layout, construction, reconstruction and improvement of all state and state-aid highways where the cost exceeds the sum of $1000, and that the act creating the department of public works repealed all sections of the General Statutes relating to the powers and duties of the highway commissioner in so far as they relate to the layout,

construction, reconstruction and improvement of such highways and bridges, and pursuant to that claim has advertised for bids for the construction, reconstruction and improvement of such highways and bridges, has awarded contracts therefor, and threatens to continue to do so, all without the approval or authority of the state highway commissioner. It is further alleged that said acts are illegal and ultra vires and this defendant is unjustifiably and without right interfering with the conduct of the state highway department and the highway commissioner and preventing the highway commissioner from performing the duties legally delegated to him by statute.

It is alleged that the defendant Swartz as comptroller of the State has issued and threatens to further issue his orders upon the treasurer of the State for the payment of bills and vouchers presented by contractors engaged in constructing, reconstructing and improving state-aid and trunk line highways and bridges, which have been approved by the defendant Hurley as commissioner of public works and not by the defendant Macdonald as highway commissioner, "all of which is illegal and contrary to the statutes providing that all moneys for such purposes shall be expended under the direction and with the approval of the highway commissioner." The prayers for relief are that the defendants commissioner of public works and comptroller be enjoined from doing any of the acts above mentioned, and that the defendant highway commissioner be enjoined to advertise for all bids for contracts relating to state or state-aid roads or bridges and award all contracts therefor, accept bonds from contractors, and exercise sole and exclusive jurisdiction of all of said roads and bridges.

The grounds of demurrer are that it appears from the allegations of the complaint that state highways

and bridges and state-aid highways and trunk lines are "real assets" within the meaning of § 540d of the 1937 Supplement, and that state highways and trunk lines are part of a state "service system" within the meaning of that section "and the commissioner of public works is, therefore, acting in accordance with the authority therein vested in him with relation to the supervision, planning, construction, erection, alteration or repair of said highways and letting contracts therefor and in certifying and approving for payment to the state comptroller all work, labor and materials furnished in such contracts."

Section 540d, General Statutes, 1937 Supplement (Public Acts, Chap. 126), provides, in subsection (a), "There is established a department of public works," and in (b), for the appointment of a commissioner of public works who shall be the administrative head of the department. The further provisions of the act which are pertinent to the present inquiry are quoted in the footnote. The succeeding sections make de-

"(c) Definitions. When used in this section, unless the context shall otherwise require, (1) the word 'agency' shall mean any officer, department, institution, board, commission or council of the state government and (2) the words 'real assets' shall mean and include all buildings, structures and sewage and other service systems, permanent and fixed equipment and land, interests in land and land betterments required for in connection with the discharge of any duties imposed upon the department of public works. . . . (e) Management of state buildings in Hartford. The commissioner of public works shall have the supervision, care and control of the building and grounds of the state capitol, the state office building, the state library and supreme court building and the state police buildings located in the city of Hartford and the premises held under lease or rental by the state and located in the city of Hartford. . . . (f) Office quarters. The commissioner of public works shall assign office space and provide necessary accommodations for state agencies other than institutions. . . . (h) Jurisdiction. The commissioner of public works shall have charge and supervision of the planning, construction, erection, remodeling, alteration, repair or enlargement of any real asset involving an expenditure in excess of one thousand dollars.

tailed provisions concerning the preparation of such plans and specifications, subject to approval of the agency involved, reception of bids and award and enforcement of contracts by the commissioner of public works, it being provided (w) that "If any appropriation for the construction, erection, alteration or enlargement of a real asset involving an expenditure or more than one thousand dollars shall be made to an agency other than the department of public works, the commissioner of public works shall award and enter into the contract as agent for such other agency." It is also provided (u) that "The commissioner of public works shall examine all bills on account of the contracts entered into under the provisions of this section, and, if they shall be found to be correct, he shall certify that the materials have been

No agency, except the department of public works, shall, unless otherwise specifically authorized by law, erect, construct, contract for the erection or construction of, or make or contract for the making of any alteration, repairs or additions to, any real asset involving an expenditure of more than one thousand dollars. When any agency other than said department shall be specifically authorized to erect, construct or make alterations or additions to any such real asset, such erection, construction, alteration or enlargement shall be subject to the inspection and general supervision of the commissioner of public works. (i) Procedure. When the general assembly shall have appropriated money to the department of public works, or to any other agency, for the construction, erection, alteration or enlargement of any real asset involving a cost of more than one thousand dollars, such appropriation shall be expended in accordance with the procedure prescribed in this section unless the work is to be done by state employees or by inmates or patients of a state institution or state institutions, or unless the agency to which the general assembly has appropriated money for any such purpose is, by the act making the appropriation, specifically authorized to construct, erect, alter or enlarge real assets independently of the department of public works or under a different procedure. (j) Requests for plans and specifications. If any appropriation for the purposes specified in subsection (i) shall be made to an agency other than the department of public works, such agency shall notify the commissioner of public works to have plans and specifications for the work prepared. . . ."

furnished and that the work or labor has been performed in a workmanlike manner and in accordance with the contract and shall approve the bills and issue his requisition upon the comptroller therefor or forward his certificate to the proper agency, as the case may be."

The demurrer, for the purposes pertaining to it, must be taken as admitting the allegations of the complaint that the commissioner of public works claims "sole jurisdiction" over the layout, construction and improvement of the highways maintained, and is exercising the same to the extent and in the manner alleged, and as advancing, as justification therefor, the proposition that such highways are "real assets" and that the state highways and trunk lines are part of a state "service system" within the scope of the definition of "real assets" in subsection (c) (2) and so within subsection (h) giving the commissioner of public works "charge and supervision of the planning, construction, erection, remodeling, alteration, repair or enlargement of any real asset involving an expenditure of more than one thousand dollars." In consequence the predominant issue upon the demurrer is as to whether or not these highways are "real assets" within the meaning and intent of that term as employed in the statute. Such ambiguity as exists as to this, while consideration is confined to the term itself, its technical or lexicologic definition or to the statute in which it is employed, is resolved when resort is made to such recognized aids as examination of "the history and derivation of the act," "the circumstances . . . known to the Legislature at the time of its enactment," the object sought to be accomplished by its passage, and other relevant circumstances. *Kelly* v. *Dewey,* 111 Conn. 281, 287, 149 Atl. 840; *Quinebaug Bank* v. *Tarbox,* 20 Conn. 510, 518; *Old Saybrook* v.

*Public Utilities Commission,* 100 Conn. 322, 327, 100 Atl. 33; *Savings Bank of Rockville* v. *Wilcox,* 117 Conn. 188, 193, 167 Atl. 709.

The parties stipulated that several specified exhibits might be used by the court for the purpose of assisting it "in ascertaining the factual and historical background in connection with the enactment of Chapter 126 of the Public Acts of 1937." Included in these are the report of the commission concerning reorganization of the state departments, and the bill concerning public works proposed by that commission. It is entirely apparent that the act under examination is a pro tanto response to recommendations of the commission, and that the bill reported to and passed by the General Assembly is intimately related to and based upon the bill proposed by the commission; they are therefore legitimate aids to the construction of the act. *Lenox Realty Co.* v. *Hackett,* 122 Conn. 143, 148, 187 Atl. 895; *Kelly* v. *Dewey,* supra, 288. We find a study of them illuminating as to the intended scope of the act adopted, including that of the term "real assets" as employed therein, and largely determinative of the present issue.

The commission was raised by an act, No. 242, Special Laws, 1935 (p. 137) which provided that it "shall study all the functions of the state government, ascertain, as far as possible, all duplications of service and effort, determine the most economical method of furnishing the present state service and recommend the abandonment, modification or consolidation of any existing departments and the creation of such new departments as may be required for the most economical operation of the state government." It was required to render a report to the Governor and to "include with its recommendations drafts of proposed legislation necessary to carry out such recommenda-

tions." This commission embodied the results of the study so directed in a voluminous and comprehensive report and submitted it to the Governor, with the accompanying proposed legislation. Chapter 18 of the report (p. 519 et seq.) is devoted to "Public Works (Highway Department and Department of Public Works)." Under the heading "Present Organization and Administration" it is said: "Public works, broadly defined, consists of all of the activities of the state relating to the acquisition, construction, maintenance, operation, and supervision of its physical plant. There are numerous state agencies, independently organized and administered, which are primarily engaged in activities of a public works character. Those concerned with highways are (1) the highway department, (2) the Merritt highway commission, and (3) the Hartford and East Hartford bridge commission." Those concerned with waterways, nine in number, are then enumerated, together with the airport commission and the commission on sculpture. "There are also certain public works activities assigned to state agencies primarily concerned with other functions. The most important of these activities relate to the construction of public buildings and to the maintenance and operation of general state buildings. The board of finance and control, the comptroller, and the state library committee are the principal permanent agencies concerned with these activities." The organization of the "highway department" is then described as is, briefly, the state highway system (p. 520). It is stated: "Except for certain restricted powers conferred upon the towns, the highway commissioner has under the statute exclusive jurisdiction over all highways laid out, constructed, reconstructed, or maintained by him. He has the same powers relating to trunk-lines and state-aid highways as are vested by law in town au-

thorities with respect to local roads." "The specific powers and duties of the highway commissioner concerning trunk-line and state-aid highways, [bridges, and use of highways]" and his general and miscellaneous powers and duties (see Chapter 80 of the General Statutes and amendments) are extensively outlined, and the functions of the Merritt highway commission and the Hartford and East Hartford bridge commission are stated, as well as of those agencies pertaining to waterways, the commission on sculpture and the airport commission, the situation and procedure as to acquisition of land "for the routine operation of [the] several state departments," the construction of state buildings, and the management and operation of the land and buildings owned by the State.

Under the heading "Administrative Reorganization. General Policies," the commission says (p. 533): "The existing organization for the administration of. public works activities illustrates the inconsistencies which invariably arise from the historical development of state agencies when undirected by any sound policy or principles governing the structure of the executive branch as a whole. Within the general function of public works there is at one extreme a high degree of centralization of administration with respect to highways and at the other extreme a high degree of decentralization of the administration with respect to water services and state buildings. There are only three agencies engaged primarily in activities relating to highways and two of these [the Merritt highway commission and the Hartford and East Hartford bridge commission] are temporary agencies established for specific purposes of a limited scope. Nine independent permanent agencies, however, are engaged primarily in one phase or another of the work involved in de-

veloping water resources and in encouraging or supervising their use. Numerous state agencies are engaged in the administration of activities relating to the acquisition, maintenance and operation of state buildings. These public works activities are closely interrelated both in policy and administration. . . . Theoretically, therefore, these activities represent the elements of a reasonably well defined and distinctive function of the state government, and, in accordance with the principle that each group of related state activities shall be administered by a single agency, they should be consolidated under one state department. There are, however, certain special conditions which justify special treatment of the highway activities of the state even though they are theoretically but one phase of the public works function. . . . The outstanding characteristic of present highway activities is the large amount of expenditures which they require, their refinancing through a special highway fund, and the magnitude of their continuous operations. From twelve to fifteen million dollars are spent annually by the state for its highways. The volume of these expenditures exceeds that of any other single function of the state government. To make these expenditures effectively and economically is a large responsibility and a difficult task. It requires the whole time and energy not only of a responsible executive but also of a large working force. To assign this task to a department which is also made responsible for other important public works activities risks a partial neglect either of one phase or the other of this function. Moreover, the continuation of the financing of highway activities through a special fund would hamper at least the interchange of personnel and facilities among the divisions of a department of public works and eliminate most of the advantages of efficiency and

economy which might be normally expected from such a consolidation. Finally, the work of highway construction and maintenance is highly specialized and has relatively few phases common with those involved in the development and utilization of water resources or in the construction, maintenance and operation of public buildings. The commission believes, therefore, that it would be unwise to consolidate highway administration with the administration of other public works activities.

"In dealing with the public works function, therefore, our general policy has been to provide two rather than one independent agency for these activities. We propose the continuation of a separate highway department and the development of a new department for public works activities other than highways."

"The present organization of the highway department" is extensively outlined (pp. 534, 538) and it is repeated (p. 535): "We propose, therefore, that the highway department be continued as a separate independent agency of the state government in charge of a highway commissioner. . . ." The commission proposed, further (p. 539), that the Merritt highway commission be abolished and all its powers and duties, except to regulate traffic, be transferred to the highway department, also those of the Hartford and East Hartford bridge commission, which it proposed to abolish. As to "other public works" the recommendation was (p. 540) that "a department of public works should be established to administer such of the present state activities relating to water resources and public buildings as are not essentially federal or local in character and as are most effectively handled through one central agency. The activities which we propose shall be assigned to the department of public works are largely administrative in character except for certain

quasi-legislative and quasi-judicial functions involved in the water services. We believe that the department should be placed in charge of a single commissioner but that provision should be made for appropriate procedures to discharge its quasi-legislative and quasi-judicial duties. We propose, therefore: 1. That there be established a public works department in charge of a commissioner of public works appointed for a four-year term by the governor with the advice and consent of the senate; and 2. That the commissioner of public works be made responsible, except as otherwise specifically provided by law, for the administration of the department and that he be authorized to appoint and remove the employees of the department subject to any statutes, rules, or regulations governing the employment of state employees."

The "drafts of proposed legislation" necessary to carry out its recommendations which the commission also submitted, as instructed by the act creating it, were in the form for a legislative bill, divided into two parts. Part I, entitled "Highway Department," provided, in § 1, "There is established a highway department which shall be in charge of the highway commissioner. Said department shall exercise all powers and discharge all duties conferred or imposed upon the highway commissioner by existing laws." Sections 2, 3 and 4 covered the recommendations, above mentioned, of abolition of the Merritt highway and the Hartford and East Hartford bridge commissions, and § 5 provided for the abandonment of operation by the highway commissioner of the Rocky Hill and Chester-Hadlyme ferries, which the report also recommended. Part II, entitled "Department of Public Works," set forth in the first twenty-four sections thereof the same provisions, verbatim with the exception of a few inconsequential verbal changes and dele-

tions, made in drafting the bill reported by the legislative committee on reorganization to the General Assembly, as are in sections 1 to 24 of Chapter 126 of the Public Acts, which became, in the compilation of the 1937 Supplement, § 540d, subsections (a) to (x) inclusive. The remaining sections of the commission bill, with the exception of the one (52) providing for a biennial report of the department of public works, covered by § 25 of the Public Act [(y) of § 540d of the 1937 Supplement], and a repeal section (53) passed in modified form, as hereafter noted, as § 26 of the Public Act, were calculated to effectuate further recommendations of the commission, including (§ 30) abolition of the commission on sculpture, (§§ 31-39) abolishing the state water agencies above referred to and transferring their duties to the department of public works, (§ 40) transferring to that department the making of regulations for use of the state dock at Guilford, (§§ 41-44) pertaining to the licensing of pilots, (§ 45) coast survey, (§ 46) board of harbor commissioners of New Haven harbor, (§ 47) harbor master, and (§ 50) soldiers home commission, none of which were included in the bill as passed by the General Assembly. Transfer to the commissioner of public works of powers and duties concerning purchasing or condemning land for and construction of armories (§§ 49 and 51) was subsequently provided for in a separate act, Chapter 434 (§§ 178d and 786d of the 1937 Supplement), the latter also giving the commissioner as well as the trustees or directors power to institute proceedings for condemnation of land "which the trustees or directors of any state institution" may deem necessary (General Statutes, § 5068). The general repeal section (53) would repeal specified sections or parts of sections of the statutes inconsistent with provisions in Article II of the bill; none of the sections mentioned

pertain to the powers of the highway commissioner. The corresponding section (26) in Chapter 126 repeals only § 64 of the General Statutes concerning the appointment of special policemen for the capitol and state institutions, § 143 duties of comptroller in relation to the capitol building, § 171 requiring approval of the board of finance and control of plans, specifications and contracts for construction of buildings for the State, and § 172 concerning employment of architects for such buildings, for all of which statutes substitute provisions are contained in the act.

It is plain from the discussion and recommendations in the report of the commission on reorganization, and from the form and content of the proposed legislation submitted by it, that the term "real assets" as used in Article II of the proposed bill included only those properties, enumerated in the definition [which became subsection (c) (1) of § 540d of the 1937 Supplement], which come within the purview of that Article, and did not include highways and bridges, these being clearly within the separate subject of Article I. We regard it as equally clear that the term is employed with like meaning and scope in the act passed by the General Assembly. It is apparent from the foregoing considerations and a comparison of the bill proposed by the commission with the one enacted as Chapter 126 of the Public Acts, that the General Assembly approved the recommendations of the commission to the extent of retaining the existing method of administering state and state-aid highways and bridges, and creating a department of public works with such jurisdiction and powers over other state activities as is conferred by the act adopted, but was unwilling, at the time at least, to go so far as to abolish the commissions and make the other changes proposed by the commission and provided for in other sections of the

legislation proposed by it. Accordingly, if the abolition of the Merritt highway and the Hartford and East Hartford bridge commissions and abandonment of ferries provided for in Article I of the proposed bill were not to be accepted, there was no occasion for retaining the remaining section (1) concerning the highway department. The administrative system headed by the highway commissioner is generally known and referred to as the highway department; it is so referred to repeatedly by the commission in its report, by the General Assembly in legislation and, indeed, by the attorney general in the brief for the defendants. The powers and duties provided for were merely those "conferred or imposed upon the highway commissioner by existing laws." The omission of Part I of the commission bill from the act as passed is without significance tending to broaden the meaning of "real assets" as employed in that act.

Legislation passed at the same session subsequent to the adoption (April 28th, 1937) of Chapter 126, is indicative of an understanding by the General Assembly that the jurisdiction of the highway commissioner had not been affected by that act. For example, Chapter 379 (1937 Supplement, § 308d) approved June 22d, amended and re-enacted § 1504 of the General Statutes authorizing the highway commissioner to purchase any land needed in connection with the layout, construction, repair or maintenance of state or state-aid highways. Chapter 326, § 1, approved June 11th (1937 Supplement, § 352d) amended and re-enacted § 1629 of the General Statutes (Cumulative Supplement, 1935, § 633c), providing that "all expenditures for the administration of the highway department" not to exceed authorized appropriations together with the expenses of the department of motor vehicles and a specified sum for the state police de-

partment shall be paid from the receipts of the commissioner of motor vehicles and his department, and the remainder "shall be expended under the direction of the highway commissioner for the construction, reconstruction and maintenance of state roads and bridges." Chapter 197, approved May 27th (1937 Supplement, § 17d), amending § 161 of the General Statutes, authorized the governor to borrow money "for the use of the state highway department." Chapter 368, approved June 16th (1937 Supplement, § 304d) amended and re-enacted the statute (Cumulative Supplement, 1935, § 522c) authorizing the highway commissioner to make regulations for the use of the state dock at Guilford, which authority the commission proposed be transferred to the department of public works. Chapter 156, approved June 21st (1937 Supplement, § 306d) amended § 1466 of the General Statutes, but preserved the provision that the salaries of such appointees of the highway commissioner "as shall be engaged in the maintenance, repair or reconstruction of highways . . . or the supervision of the construction of state-aid highways when built by the highway department" may be paid from motor vehicle fees. The general appropriation bill, approved June 9th (Special Laws, 1937, p. 1002), made detailed appropriations for the "highway department" (p. 1017), including specific sums for highway and bridge maintenance, state-aid construction, construction other than state-aid, and reconstruction.

It is to be noted also, without prolonging discussion by detailed analysis, that the procedure directed in the Public Works Act [§ 540d, subsections (i) to (s)] pertaining to contracts and preliminaries thereto is in many respects inappropriate and unsuited to highway contracts, for reasons generally indicated in the ex-

cerpts which we have quoted from the report of the commission on reorganization.

The foregoing considerations are ample to convince us that Chapter 126 (1937 Supplement, § 540d) manifests no legislative intent to deprive the highway commissioner of jurisdiction over the layout, construction, reconstruction and improvement of state and state-aid highways and bridges, or to limit or impair that jurisdiction or his powers and duties relating thereto by transferring them to the department or the commissioner of public works.

There is no error.

In this opinion the other judges concurred.