## THE INSTITUTE OF LIVING *v.* TOWN AND CITY OF HARTFORD

MALTBIE, C. J., BROWN, ELLS, DICKENSON and WYNNE, JS.

Argued May 14—decided July 19—reargued November 12—
amended opinion filed December 19, 1946

*Frank Covello* and *Samuel H. Aron,* for the appellant (defendant).

*Lucius F. Robinson, Jr.,* with whom was *Frank Chapman,* for the appellee (plaintiff).

MALTBIE, C. J. The question presented in this appeal from the board of tax review of the defendant city is whether the property of the plaintiff, a hospital for the mentally ill incorporated under the laws of Connecticut, is exempt from taxation. Previous to 1901, its property was exempt under a law which authorized it to hold real and personal property to an amount not exceeding $400,000, "which shall be free from taxation." 6 Spec. Laws 181. In that year the exemption was qualified by excepting taxes laid by the school district within which the property was located. 13 Spec. Laws 1025. In 1927, the charter of the plaintiff was amended to enable it to hold real and personal property to the amount

of $3,000,000, and the act provided that its property "shall be subject to taxation and entitled to tax exemption only in accordance with the provisions of the general statutes." 20 Spec. Laws 390. Its claim is based therefore upon the general statute exempting certain property and specifically upon subsection (7) of § 1163 of the General Statutes, which exempts, subject to certain exceptions not material to the issue before us, "the real property of, or held in trust for, a Connecticut corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes and the personal property of, or held in trust for, any such corporation," provided that none of its officers, members or employees receives, or shall in the future receive, any pecuniary profit from its operations, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes, and further provided that quadrennially a statement shall be filed with the local board of assessors of the town or city where the property is located. The trial court found that the plaintiff's property was exempt under this provision and the defendant has appealed. One of its claims is that, as the plaintiff is a hospital, it can claim exemption only under another provision of § 1163, subsection (14), that, subject to an exception not now material, "all property of, or held in trust for, any hospital society or sanitorium which is supported wholly or in part by state appropriations" is exempt, and that the plaintiff cannot prevail because it admittedly receives nothing from the state for its support.

Our statute of charitable uses adopted in 1702 provided that property given or granted for the maintenance of the ministry of the gospel in the colony, or of schools of learning, or for the relief of the poor, or for "any other public and charitable use" should be continued to the use or uses for which the property was given and to no other use whatsoever and should be exempt from taxation. See Statutes, 1808, p. 433. In the Revision of 1821 such property was subjected to taxation to a limited extent; Rev. 1821, p. 446; and that continued to be the law until 1851. Rev. 1849, p. 604. In 1851 certain properties were exempted from taxation, including "such portions of buildings as are exclusively occupied as colleges, academies, school-houses, churches or public infirmaries; all buildings belonging to scientific, literary, benevolent or ecclesiastical societies, used exclusively for scientific, literary, benevolent or religious purposes." Public Acts, 1851, Chap. 47, § 6. The word "infirmaries" meant those institutions which we now call hospitals; in the eighteenth century "infirmary" was "the common name for a public hospital." Oxford Dictionary, Vol. 5, Pt. 2. With some slight changes in phraseology and certain additions, these two classifications of exempt property remained a part of our law until 1925. See Public Acts, 1921, Chap. 109.

Tracing the history of another provision in the general exemption statute, we find that in 1854 the legislature voted an annual appropriation of $2000 to the General Hospital Society of Connecticut "for the support of charity patients in said hospital"; 3 Spec. Laws 309; and that in 1861 a similar act was passed in favor of the Hartford Hospital. 5 Spec. Laws 452. In 1856, a statute was enacted which

provided: ". . . all property, real and personal, which has been, or may be granted or given to 'The Hartford Hospital,' and by them invested and held for the use of said institution, shall with the income thereof, remain exempt from taxation"; Public Acts, 1856, Chap. 82; and this provision was incorporated into the general exemption statute in the Revision of 1866 (p. 708). In the Revision of 1875 (p. 155) the clause was changed to read: ". . . all property of the General Hospital Society of Connecticut and the Hartford Hospital" shall be exempt; and this provision was retained in the Revision of 1888 (p. 851). The General Assembly thereafter increased the number of hospitals to which it made appropriations until in 1895 they numbered five, but the provision that the money should be expended for charity patients was continued in force. Public Acts, 1895, Chap. 278. In that year a statute was passed which exempted from taxation "all property of any hospital society which is supported wholly or in part by state appropriations." Public Acts, 1895, Chap. 327. This provision was incorporated into and continued as a part of the general exemption statute until 1925. See Public Acts, 1921, Chap. 109.

The General Assembly then began a series of enactments designed "to draw more precisely the line between property, which because of its devotion to public use, ought to be exempt and that which ought not to be." *Masonic Building Assn.* v. *Stamford,* 119 Conn. 53, 58, 174 A. 301. Subsection (4) of § 1 of chapter 245 of the Public Acts of 1925 exempted the personal property of "scientific, educational, literary or benevolent institutions," provided their assets were permanently held for and devoted to such uses and that their members could not by any

possibility receive for their personal use any of the property of the corporation in the event of its dissolution and that the members could not by any possibility receive any financial benefit from their membership, and further that a statement of property should be filed with the board of assessors; and the act also exempted the real estate owned and actually occupied and used by any such corporation reasonably necessary to carry out one or more of its purposes. Subsequent subsections separately exempted, subject to certain qualifications, personal property owned by, or held in trust for, religious organizations; houses of religious worship, and the land on which they stood, owned by, or held in trust for the use of, any religious organization, with their pews and furniture; orphan asylums, homes for children, reformatories, infirmaries and schools owned and conducted by any religious organization, and the land on which they stood; parsonages of any ecclesiastical society to a certain value, while used solely for that purpose; and "all property of any hospital society which is supported wholly or in part by state appropriations." In 1927 this act was substantially rewritten, generally retaining the same form but with some additions and some changes in the qualifications necessary to secure exemptions; and the exemption of property of hospitals was altered to read: ". . . all property of, or held in trust for, any hospital society or sanatorium which is supported wholly or in part by state appropriations." Public Acts, 1927, Chap. 319. In 1929 certain of the subsections were again somewhat amended, but the general classifications of property as made in the 1925 act were retained, and the provisions concerning the property of hospital societies

remained unchanged. Public Acts, 1929, Chap. 24. The act of 1927 as amended in 1929 constitutes § 1163 of the General Statutes now in force, and, while several of its subsections have since been somewhat altered, in no instance do these changes affect the issue before us.

After we had handed down an opinion in this case, the plaintiff made a motion for a reargument based largely upon a statement in the report of a commission appointed under a special act of the General Assembly passed at its 1923 session to study the matter of exemptions from taxation, to consider whether existing statutes concerning such exemptions should be amended, and to report to the next session of the General Assembly. 19 Spec. Laws 404. The committee filed a report under date of January 1, 1925, fifty-six pages in length, and in that report it suggested certain changes which were to a considerable extent embodied in the act of 1925. In discussing a proposal to omit from the statute as it then stood the specific exemption of buildings and lands occupied as colleges, academies, churches and infirmaries, and to change the language of the provision which had previously exempted the buildings and lands used exclusively for scientific, literary, benevolent or ecclesiastical societies, the report states as to the latter: "It includes all the classes of institutions covered by" the specific exemption the omission of which was suggested. The report was transmitted by the governor to both houses of the General Assembly; Senate Journal 1925, p. 341; House Journal 1925, p. 309; and it was undoubtedly before the legislative committee on finance which reported to the General Assembly the act of 1925. House Journal 1925, p 219; Senate Journal 1925, pp.

1316, 1366. The defendant says correctly that we may take judicial notice of the report; *General Hospital Society* v. *New Haven County,* 127 Conn. 53, 59, 14 A. 2d 746; and we may properly consider the statement we have quoted in determining the legislative intent expressed in the act of 1925. *Connecticut Rural Roads Improvment Assn.* v. *Hurley,* 124 Conn. 20, 26, 197 A. 90; *W. T. Grant Co.* v. *McLaughlin,* 129 Conn. 663, 666, 30 A. 2d 921.

The fact that the report was before the committee is not, however, conclusive of the legislative intent expressed in the act as subsequently passed. Statements in such a report are subject to a greater or less extent to the principal reason for refusing to admit in evidence testimony as to what occurred at a meeting of a legislative committee; that reason is that it is uncertain how far the contents of the report were known to and influential with the members of the General Assembly who actually enacted the law; *Litchfield* v. *Bridgeport,* 103 Conn. 565, 573, 131 A. 560; and this consideration has special weight where the question is not what the general purpose of a statute was but what the intent of some particular provision in it was. As bearing upon the likelihood that the brief statement we have quoted from the lengthy report in question became a material factor in the adoption of the particular provisions of the 1925 act, it is significant that, as counsel for the plaintiff admitted during the reargument, the report was known to and examined by its attorneys before the case was originally heard by us but the particular statement brought to our attention on the reargument had escaped their notice; and if they, in the preparation of the case, overlooked it, there would seem to be no great probability that many of the

members of the General Assembly had it in mind when they voted for the act.

The act which actually passed the General Assembly contained many provisions not included in that proposed by the commission, among which was the provision exempting the property of hospital societies supported in whole or in part by state appropriations; and the language of the section proposed in the report which contained the broad provision exempting the property of scientific, educational, literary or benevolent institutions was substantially abbreviated and changed. The bill which was passed by the General Assembly was evidently the product of work done by the legislative committee itself; they built upon but did not adopt in its entirety the act proposed in the report; and it may very well be that in their study of the matter they concluded that the provisions for hospitals wholly or in part supported by state appropriations adequately cared for and properly limited the exemption of such institutions. Indeed, that the General Assembly did not regard the broad provision in the 1925 act exempting the property of "benevolent" institutions as including "infirmaries" is suggested by the fact that, when the bill came before the senate, it was amended to include "orphan asylums, . . . infirmaries, and schools owned and conducted by any religious organization, and the land on which they stand." Senate Journal 1925, p. 1383. The circumstances to which we have referred greatly lessen the value of the statement we have quoted from the report as indicative of the legislative intent.

The plaintiff, in supporting its claim of exemption, relies also on the fact that taxing officials in Hartford did not assess plaintiff's property for taxation from

1925, when a statutory exemption applicable to it was repealed, until the assessment of 1943, from which the present appeal was taken. We have recognized that an administrative practice, particularly that of public officers charged with the enforcement of a statute, may be cogent evidence of the intent manifested in it when its terms are ambiguous or its meaning uncertain; *Savings Bank of Rockville* v. *Wilcox*, 117 Conn. 188, 194, 167 A. 709; *State ex rel. Gray* v. *Quintilian*, 121 Conn. 300, 304, 184 A. 382; but, where the intent clearly appears from the terms of the law, a failure of public officials to carry out its provisions must be attributed, at the least, to misunderstanding on their part. *Conzelman* v. *Bristol*, 122 Conn. 218, 223, 188 A. 659. In this case, the terms of the statute are applicable to the assessment of property in all the one hundred and sixty-nine municipalities of the state; the broad question whether a hospital which is not wholly or in part supported by state appropriations may claim exemption under the provisions of the statute concerning charitable institutions may arise in any of them; and to hold that the acts of the assessment officials of a single city with reference to the property of a single owner may be indicative of the legislative intent expressed in the statute would carry the principle of practical construction beyond all reason. See *United States* v. *Pine River Logging & Improvement Co.*, 89 F. 907, 915, 32 C.C.A. 406; *Chicago* v. *Becker*, 233 Ill. 189, 191, 84 N. E. 242; *Twohy Bros. Co.* v. *Ochoco Irrigation District*, 108 Ore. 1, 18, 210 P. 873.

In 1925 the situation was that the statute exempted in one provision buildings or portions of buildings, with the land on which they stood, exclusively

occupied as colleges, academies, churches, public schoolhouses, or infirmaries, with the land appurtenant to such infirmaries, parsonages not exceeding a certain value, and buildings with the land on which they stood not exceeding a certain value owned by a church and located on a camp meeting ground; a second provision exempted, with certain exceptions, buildings and the land on which they stood belonging to and used exclusively for scientific, literary, benevolent or ecclesiastical societies; and a third provision exempted all property of any hospital society which was supported in whole or in part by state appropriations. The changes made by the act of 1925, and thereafter continued in force, which are significant to our inquiry were these: The first provision exempting the buildings and land on which they stood, occupied by certain named institutions, was omitted; there was no special exemption of the property used for colleges, academies or schoolhouses but the language of the second provision exempting the property of benevolent organizations, later referred to as "charitable" organizations, was changed to include the word "educational," thus making provision for colleges and schools and bringing them within the conditions provided in that clause; on the other hand, the word "ecclesiastical," which had previously been a part of that provision, was omitted, and the property of churches was dealt with in separate subsections, covering the personal property of religious organizations, houses of religious worship and the land on which they stood, orphan asylums, infirmaries and schools owned and conducted by any religious organization, with the land on which they stood, and, as to each, the conditions necessary to bring them

within the act were stated; and the provision exempting "infirmaries," with the land appurtenant to them, was omitted, leaving in effect, however, the exemption of all the property of hospital societies supported wholly or in part by state appropriations. The obvious purpose of the act of 1925 was to define as to each of these institutions the conditions under which they might claim exemption.

As regards hospitals, the legislature was in 1925 confronted with this situation: As the statute then stood, there was a specific provision exempting buildings or portions thereof exclusively occupied as "infirmaries," that is, hospitals, with the land appurtenant to them, and also a provision exempting "all property" of hospitals receiving state aid. When applied to the latter, the two provisions overlapped, and to make a coherent law it was necessary to harmonize them. Moreover, the broad language in the previous statute would have exempted the buildings and land even of private hospitals conducted for profit. The legislature might have brought hospitals within the general provision exempting charitable institutions, subject to the limitations contained in the clause as to them, but, dealing as it did specifically with hospitals in another subsection, it naturally would have put in the general clause something evincing an intent to include them, as was done in the case of colleges and schools; or it might have made a general provision as to hospitals and a special provision as to those receiving state aid. It took neither of these courses but made a single provision exempting the property of those hospitals only which received state aid. It may have been that, in so doing, the members of the General Assembly had in mind the requirement that hospitals receiving

state aid were at that time and still are under a statutory duty as regards the amounts they could or can charge for the care of patients where the state is responsible for the expense. Public Acts, 1909, Chap. 118; General Statutes, § 189; Sup. 1945, § 38h. However that may be, as the act stood previous to 1925, the legislature clearly intended that the property of any of the institutions specifically mentioned in the first classification should be exempt under that provision and not under the general clause dealing with charitable organizations. There is nothing in the terms of the 1925 act which suggests an intent to bring them within that clause except where, as regards colleges and schools, its language was so changed as clearly to include them.

In *Wardell* v. *Killingly,* 97 Conn. 423, 433, 117 A. 520, we quoted from *Kepner* v. *United States,* 195 U. S. 100, 125, 24 S. Ct. 797, as follows: "It is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." The situation before us is a typical example of the operation of that rule. When the legislature, instead of generally exempting the property of hospitals, prescribed, in a separate subsection of the statute, the terms upon which that exemption would be granted, the specific provision must be taken as controlling. As regards institutions of a religious nature, it was upon the basis of the subsections dealing with "houses of religious worship" or "dwelling houses . . . actually used by . . . officiating clergymen," rather than upon general exemption of property used for "charitable" purposes, that we decided the cases of *Masonic Building Assn.* v.

*Stamford,* supra, 60, and *Woodstock* v. *The Retreat, Inc.,* 125 Conn. 52, 3 A. 2d 232. The meaning of the statute must be determined not by what we might find to have been the intent of the legislature but by the intent which is manifested by the language it has used. *Finoia* v. *Winchester Repeating Arms Co.,* 130 Conn. 381, 384, 34 A. 2d 636. Read in the light of the principles of law established by courts for the purpose of ascertaining legislative intent, the terms of the act before us clearly establish that the only provision in the law under which the plaintiff can claim exemption is the one which exempts the property of hospitals "supported wholly or in part by state appropriations"; and the statement which we have quoted from the report of the special commission in 1925 affords entirely too weak a basis upon which to reach any other conclusion.

The plaintiff calls attention to the particular language of the act of 1927 increasing the amount of property it might hold and providing that its property "shall be subject to taxation and entitled to tax exemption only in accordance with the provisions of the general statutes." The plain meaning of this provision is that the property shall not be exempt from taxation unless it is made so by some provision of the General Statutes. The explanation of the rather indefinite language probably lies in the fact that at the same session of the General Assembly when this amendment to the plaintiff's charter was adopted the matter of amending the general statute of exemptions was pending, and, as appears from the file copies, the bill containing the amendment was reported by the committee to which it was referred before the bill as to tax exemptions came from the different committee having it in charge.

The trial court has concluded that the plaintiff was organized as a hospital for the insane and that it has never deviated from that purpose. As such, it could only claim that its property was exempt under the subsection of § 1163 which concerns property of a hospital society, with the condition annexed that it is "supported wholly or in part by state appropriations." As the plaintiff admittedly has not met this condition, it is not entitled to exemption.

We have less hesitance in reaching this conclusion because of the fact that the legislature now grants money in aid of thirty-six hospitals; 24 Spec. Laws 834; and these include practically all of the general hospitals in the state. State Reg. & Manual, 1943–44, p. 501 et seq. In addition to the requirement as to the amount to be charged for patients treated at the expense of the state, hospitals receiving state aid are now required to make biennial reports and to install a certain type of bookkeeping; and their records are subject to inspection by any discharged patient or his physician or attorney. General Statutes, §§ 190–192. It does not appear that the plaintiff has at any recent time sought state aid and been refused. If it is willing to assume the obligations incumbent upon a state-aid hospital, and the General Assembly is satisfied that its method of operation is such that it is entitled to receive it, there is little reason to doubt that it could secure a state appropriation, with an incidental exemption from taxation. We are not greatly impressed with its argument that to uphold the assessment made in 1943 would impose upon it an unjustifiable burden in that, if an exemption of the property is now denied, it will have to readjust its finances in order to pay the taxes due

not only on the assessment list of that year but also upon the lists of subsequent years, until it can secure relief from the legislature. In the aggregate the taxes due or to become due on these lists amount to a large sum; but it knew in 1943 that a claim was being made that its property was liable to taxation, and it could have arranged its finances at and since that time to pay the taxes should the exemption ultimately be denied.

There is error, the judgment is set aside and the case is remanded to the Court of Common Pleas with direction to render judgment dismissing the appeal and confirming the action of the board of tax review in including the plaintiff's property in the list of taxable property of the defendant city.

In this opinion the other judges concurred.