FAY E. DOWNER *v.* LIQUOR CONTROL COMMISSION

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued March 4—decided April 22, 1948

*Joseph P. Cooney,* for the appellant (plaintiff).

*Pasquale Vioni,* assistant attorney general, with whom, on the brief, was *William L. Hadden,* attorney general, for the appellee (defendant).

*Ernest McCormick,* with whom was *Charles J. Cole,* argued the cause as amicus curiae, in favor of the appellant.

*Albert L. Coles* argued the cause as amicus curiae, in favor of the appellee.

*A. A. Ribicoff* appeared on the brief of the appellant as amicus curiae.

ELLS, J. The plaintiff's application to the liquor control commission for a wholesaler beer permit for premises located at 54 Barbour Street in Hartford showed that the proposed backer was Liebmann Breweries, Inc., a New York corporation which was also the backer on a Connecticut out-of-state shipper's permit for beer only. General Statutes, Cum. Sup. 1939, § 968e, provides that "no backer or permittee of one class shall be a backer or permittee of any other class except in the case of railroad or boat permits." The commission decided that the permit already held by Liebmann was in a different class from the one for which application was made, and denied the application because of "unsuitability of backer." The plaintiff appealed to the Court of Common Pleas, it sustained the commission's decision, and the plaintiff has appealed to this court.

The Liquor Control Act was originally passed in 1933 as a substitute for chapter 151 of the General Statutes, which dealt with enforcement of the liquor laws during prohibition. The act has been subjected to frequent amendment. Its purpose is to license, regulate and control the manufacture, distribution and sale of intoxicating liquor. The power to issue permits is given to the liquor control commission,

which may, in a proper case, refuse to issue one to a particular person or for a particular place. *Murphy* v. *Bergin,* 118 Conn. 249, 260, 171 A. 433. Section 17 of the act (Cum. Sup. 1933, § 685b) provided: "Classes of permits. Permits shall be subject to the regulations of the commission and the provisions of this chapter and shall be of the following classes: (a) Manufacturer permit, (b) wholesaler permit, (c) package store permit, (d) hotel permit, (e) restaurant permit, (f) club permit, (g) tavern permit, (h) railroad permit, (i) boat permit, (j) druggist permit." Each class of permit is dealt with in a separate section or sections of the act which define the acts permitted and regulate the conduct of the business under them. Section 18 of the act (Cum. Sup. 1933, § 686b) defined the manufacturer permit. Subsequently amended, it provided, when this matter came before the commission, that such a permit should allow both manufacturing and wholesaling, and it allowed the holder of a manufacturer permit to apply for and receive a wholesaler permit.' General Statutes, Sup. 1941, § 454f.

In 1935, § 685b was re-enacted in the same language, except that manufacturer permits were divided into "(a) (1) Manufacturer permit, or (2) manufacturer permit for beer only"; wholesaler permits were divided into "(b) (1) wholesaler permit, or (2) wholesaler permit for beer only"; like changes were made as to package store and restaurant permits; and there was added "(k) temporary permit." Public Acts, 1935, Chap. 292, § 6; Cum. Sup. 1935, § 1027c. In 1939, § 1027c was amended by adding to it: "(l) warehouse permit; (m) concession permit." Public Acts, 1939, Chap. 280, § 1; Cum. Sup. 1939, § 955e. In 1941, the legislature re-enacted § 955e, providing that permits "shall be of the fol-

lowing classes," following this with a list of the various classes originally or subsequently incorporated into the statute, and adding: "(n) out-of-state shipper's permit for alcoholic liquors; (o) out-of-state shipper's permit for beer only." Public Acts, 1941, Chap. 327, § 4; Sup. 1941, § 453f. It also enacted two sections which define the new classes. Section 457f provides as follows: "An out-of-state shipper's permit for beer only shall allow the sale of beer only to manufacturer and wholesaler permittees in this state as permitted by law." The only subsequent modification relating to an out-of-state shipper's permit was effected indirectly in 1943 when permission was granted to wholesalers to import products from outside the United States. Sup. 1943, § 525g. In 1945, the statute authorizing classes of permits was again amended, but these amendments are immaterial to the issues in this case. Sup. 1945, § 622h.

Section 35 of the original act (Cum. Sup. 1933, § 703b) was entitled "Limitation of permits. Loans" and provided that "no permittee of one class shall be granted a permit of any other class, and no backer of a permittee of one class shall be a backer of a permittee of another class" except as regards railroad and boat permits; and the section went on to limit loans or credits extended by manufacturers to permittees or backers, other than merchandising credit in the ordinary course of business for a period not exceeding sixty days. Public Acts, 1933, Chap. 140, § 35. In 1935, § 703b was amended; the first sentence was made to read: "No backer or permittee of one class shall be a backer or permittee of any other class, except in the case of railroad and boat permits"; the provision as to loans or credits from a manufacturer was retained. Cum. Sup. 1935, § 1047c. In 1939, § 1047c was again amended; the

first sentence was as quoted above; but the statute was extended to make loans or credits in any form unlawful except for a period of thirty days, not only loans or credits from any manufacturer permittee to a permittee or his backer, but also loans or credits from the backer of a manufacturer permittee or from a wholesaler permittee or his backer. Cum. Sup. 1939, § 968e. Section 968e expresses the legislative intent to eliminate the so-called "tied house" evil. "The purpose of this statute is to prohibit the backer or permittee of one class of permit from being the backer or permittee of another class." *Eder* v. *Patterson,* 132 Conn. 152, 155, 42 A. 2d 794.

The legislature created distinct classes of permits, designating each class by a letter or letter and number. The out-of-state shipper's permit for beer only, "(o)," is in a different class from a wholesaler permit for beer only, "(b) (2)." The language of § 968e is plain and unambiguous. The statute must stand unless it is clearly unconstitutional or unless it is evident that the legislature must have intended an exception which it did not express. *Tileston* v. *Ullman,* 129 Conn. 84, 94, 26 A. 2d 582. The plaintiff does not claim that it is unconstitutional. He contends that the act, "interpreted in the light of its own provisions and the history of its enactment—in other words, within its four corners—clearly establishes the lack of any intent on the part of the Legislature to require out-of-state manufacturers to wholesale through independent wholesalers while reserving to local manufacturers the right to wholesale directly and as backers of wholesaler permittees." The gist of his argument is that the manufacturer permit and limitation sections, read together, disclose a legislative intent to permit an identity of ownership interest in the case of manufacturing and wholesaling but

to prevent such identity of interest in the case of manufacturing or wholesaling and retailing; and that the purpose of § 968e is to prohibit the ownership of a retail outlet by a manufacturer or wholesaler. Neither the legislative history nor the provisions of the act taken as a whole lend reasonable support to these claims. The first sentence of § 968e prohibits permittees and backers of one class from being permittees and backers in another class of permit. It is simple, clear and understandable. The exceptions intended by the legislature were stated in the various sections quoted above. If it had intended to except parties in the situation of Liebmann, it would have said so. The remainder of § 968e is purely a prohibition against credit arrangements which, if allowed to exist, would circumvent the prohibition of the first sentence. The section must be taken as a whole. The plaintiff attempts to segregate the credit part and read into it limitations which do not appear. Nowhere in the act is there any provision which reasonably indicates that § 968e is directed only at the tied house at the retail level; nowhere is there any reasonable indication that the legislature intended an exception which it did not express.

It appears that it has been the practice of the liquor control commission, since the creation of the out-of-state shipper's permit and until its decision upon the present application, to issue out-of-state shippers' permits to corporations as well as individuals and to issue wholesaler permits to individuals backed by the holders of out-of-state shippers' permits. The plaintiff contends in his brief, somewhat casually, that this course of conduct constituted a practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged

with its administration and will not be disturbed except for weighty reasons. *Brewster* v. *Gage,* 280 U. S. 327, 336, 50 S. Ct. 115, 74 L. Ed. 457. One answer is that ambiguous or doubtful statutes are not in question in the present case. "We have recognized that an administrative practice, particularly that of public officers charged with the enforcement of a statute, may be cogent evidence of the intent manifested in it when its terms are ambiguous or its meaning uncertain; . . . but where the intent clearly appears from the terms of the law, a failure of public officials to carry out its provisions must be attributed, at the least, to misunderstanding on their part." *Institute of Living* v. *Hartford,* 133 Conn. 258, 267, 50 A. 2d 822; *Conzelman* v. *Bristol,* 122 Conn. 218, 223, 188 A. 659.

Our conclusion is that the Liquor Control Act does not expressly or by implication exclude the application of § 968e to an out-of-state shipper's permit; that it does not permit us to read an exception into that section "to avoid consequences so absurd or unreasonable that the legislature must be presumed not to have intended them"; *Tileston* v. *Ullman,* supra, 92; and that the denial of the permit in question is mandatory under the statute.

There is no error.

In this opinion the other judges concurred.