CRAIG BURGE ET AL. *v.* TOWN OF STONINGTON ET AL.
(14052)

SHEA, CALLAHAN, GLASS, BORDEN and F. X. HENNESSY, Js.

Argued April 26—decision released July 16, 1991

*Jason M. Dodge,* for the appellant (named defendant).

*Thomas J. Riley,* with whom was *Michael R. Kerin,* for the appellee (plaintiff Lawrence and Memorial Hospital).

SHEA, J. We are asked to decide whether the "act establishing a prospective payment system for hospitals," Public Acts 1984, No. 84-315 (the DRG Act), affected an employer's workers' compensation liability for hospital bills incurred by an injured employee between 1984 and 1989, after which period the act was repealed. We conclude that an employer was required to pay the diagnosis related group or "DRG" charges for hospital services billed during that five-year period.

The parties stipulated to the pertinent facts. The named plaintiff, Craig Burge (the employee), was employed by the named defendant, the town of Stonington (the employer). On August 21, 1987, he suffered an injury compensable under the Workers' Compensation Act, General Statutes § 31-275 et seq., and was hospitalized between September 2 and September 7, 1988. During his hospitalization, Lawrence and Memorial Hospital (the hospital) provided him with rea-

sonable and necessary hospital care. The hospital's bill, dated September 12, 1988, itemized charges totaling $3799.74. At that time, however, the DRG Act required the hospital to bill a fixed charge per case based upon the diagnosis of the patient and the patient's payer category, without regard to the particular services rendered. General Statutes § 19a-165f (a).[1] Accordingly, the hospital billed the employee $7207.55.[2] The employer, conceding liability under the Workers' Compensation Act, paid the itemized charges, but refused to pay the balance of $3407.81. In the ensuing proceedings before the workers' compensation commissioner for the second district and the compensation review

[1] General Statutes (Rev. to 1987) § 19a-165f, as amended by Public Acts 1987, No. 87-122, No. 87-443, § 5, and No. 87-510, § 3, provided, in pertinent part: "(a) For the rate year commencing in 1987, and for subsequent rate years, hospitals shall charge according to a fee schedule based on a standard fixed charge per case for all inpatient cases except cases in exempt units or cases classified as outliers and the patient shall be liable for payment on the basis of such schedule. A hospital may not charge for inpatient cases not classified as outliers on other than a fixed charge per case unless otherwise authorized under sections 19a-165 to 19a-165g, inclusive. Reimbursement on behalf of such inpatient cases shall be based on the fixed charge per case. Such fee schedule shall be used for all payers except for Medicare and for medical assistance provided pursuant to chapters 302 and 308 . . . . The commission on hospitals and health care shall adopt regulations . . . which define a self-pay patient and shall establish an appeals process for self-pay patients . . . ."

[2] The bill provided the following statement of charges:

| "MED/SURG/GYN-S/P | $1,405.00 |
|---|---|
| ANESTHESIA | 808.56 |
| LABORATORY | 110.46 |
| OPERATING ROOM | 1,080.67 |
| RECOVERY ROOM | 196.07 |
| PHARMACY | 36.55 |
| MED/SURG/CENTRAL | 74.57 |
| INTRAVENOUS THERAPY | 87.86 |
| TOTAL CHARGES | 3,799.74 |
| CT ALL PAYOR SYSTEM DRG CHARGE | 7,207.55" |

Thus, the detailed charges totaled $3799.74, whereas the DRG charge was $7207.55, a difference of $3407.81.

division (CRD), the employer argued that the plain language of General Statutes (Rev. to 1987) § 31-294[3] limited its liability for hospital fees to the actual cost of the services provided to the employee, i.e., the itemized charges, and that this language was neither explicitly nor implicitly repealed by passage of the DRG Act in 1984. The commissioner, and the CRD, disagreed.

The CRD rejected the employer's contentions on the same basis expounded fully in an earlier CRD decision, *Tanner* v. *Walgren Tree Experts,* No. 748 CRD-8-88-7 (January 17, 1990). In *Tanner,* the CRD concluded that after the legislature in 1973 created the commission on hospitals and health care (hospital commission) with rate-setting and budget review powers, the "actual cost" language in § 31-294 "ceased to be relevant." It found that since that date, the workers' compensation commissioners, when determining employer liability for hospital confinement and treatment, had relied on the uniform rates set by the hospital commission, and it concluded that the DRG rates set by the commission after passage of the DRG Act were similarly applicable. Finally, the CRD held that the legislature had resolved any remaining ambiguity when it enacted No. 88-357 of the 1988 Public Acts, which explicitly amended both § 19a-165f and § 31-294 by requiring

---

[3] General Statutes (Rev. to 1987) § 31-294 provided, in pertinent part: "The pecuniary liability of the employer for the medical and surgical service herein required shall be limited to such charges as prevail in the same community or similar communities for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person; but the liability of the employer for hospital service shall be the amount it actually costs the hospital to render the service, such amount to be determined by the commissioner, except in the case of state humane institutions, in which case the liability of the employer shall be the per capita cost as determined by the comptroller under the provisions of section 17-295."

employers to pay hospital DRG charges. The CRD held that these amendments were intended to clarify existing law and thus concluded that since October 1, 1984, the effective date of the DRG Act, employers would be required to pay for hospital services at the DRG rates.

I

The Workers' Compensation Act, including § 31-294, has been a part of our law since 1913. In the ensuing seventy-eight years, the workers' compensation commissioners have made numerous awards, including orders to employers to pay hospital charges. It is appropriate for us to consider this long history of practical application in our analysis of the statute's meaning and scope.

In September, 1988, when the employee was injured, General Statutes § 31-294 provided in pertinent part: "The pecuniary liability of the employer for the medical and surgical service herein required shall be limited to such charges as prevail in the same community or similar communities for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person; *but the liability of the employer for hospital service shall be the amount it actually costs the hospital to render the service, such amount to be determined by the commissioner* . . . ." (Emphasis added.)

The italicized language was added to the statute in 1921; Public Acts 1921, c. 306, § 3; apparently in response to the deep division between compensation commissioners regarding the appropriate level of hospital fees for which employers would be liable. Early workers' compensation commission decisions indicate that most members of the industrial working class at the beginning of this century lacked the funds to pay their hospital costs. As a result, hospitals commonly

admitted them to the "general wards" or "public wards" of the hospital, which provided hospital care to the general public at below cost. See, e.g., *Schillinger* v. *Yale Brewing Co.,* 3 Conn. Comp. Dec. I-181 (1919); *Malone* v. *H. R. Douglas, Inc.,* 1 Conn. Comp. Dec. 297 (1915). For example, a patient in the "general wards" in the period 1916 through 1919 might pay $7 per week to receive bed, board, nursing care and the services, performed on a pro bono basis, of the same doctors and surgeons who cared for the private patients. See *Schillinger* v. *Yale Brewing Co.,* supra; *Beinotovitz* v. *National Iron Works,* 1 Conn. Comp. Dec. 623 (1916); *Johnson* v. *Spring Glen Farm, Inc.,* 1 Conn. Comp. Dec. 593 (1916). By contrast, a private room patient could pay $25 per week for bed and board and in addition be required to pay separately for doctors' and nurses' fees. See, e.g., *Beinotovitz* v. *National Iron Works,* supra; cf. *Christophson* v. *Turner Construction Co.,* 1 Conn. Comp. Dec. 591 (1916) ($18 and above). It was widely acknowledged that the "general ward" was in essence a "charity" ward that operated at a loss. See *Spencer* v. *New Haven Rendering Co.,* 4 Conn. Comp. Dec. I-229 (1921); *Schillinger* v. *Yale Brewing Co.,* supra; *Kelly* v. *Whitaker,* 2 Conn. Comp. Dec. I-363 (1917); *Anderson* v. *Maxim Munitions Corporation,* 2 Conn. Comp. Dec. I-88, I-89 (1916). Some hospitals developed a third alternative, commonly called the "private ward," or semiprivate rooms with eight to ten patients. These "private wards" provided a higher nurse to patient ratio, better food, and better conditions. Charges for admission to "private wards" were viewed as "compensatory," that is, the fee charged was expected to cover the actual costs of the stay. See *Spencer* v. *New Haven Rendering Co.,* supra, I-232; *Anderson* v. *Maxim Munitions Corporation,* supra, I-89. In such wards the patient also had to pay extra for doctors' bills, but not usually for nursing care. Some

hospitals developed "private wards" only as a response to enactment of the Workers' Compensation Act; in those hospitals the "private wards" were actually referred to as "compensation wards." See, e.g., *Spencer* v. *New Haven Rendering Co.*, supra; *Schillinger* v. *Yale Brewing Co.*, supra, I-183.

In those early days, the compensation commissioners debated whether hospitals could receive more than their below-cost "general ward" fees for hospital care provided to members of the industrial working class who would, without workers' compensation, undoubtedly have relied on the "general" or "charity" wards for hospital care. Compare *Schillinger* v. *Yale Brewing Co.*, supra, and *Johnson* v. *Spring Glen Farm, Inc.*, supra. Not infrequently, a hospital would admit injured workers to the "private ward" and be paid only the fee for "general ward" treatment. See, e.g., *Schillinger* v. *Yale Brewing Co.*, supra; *Kelly* v. *Whitaker*, supra; *Malone* v. *H. R. Douglas, Inc.*, supra. This practice would result in a substantial loss to the hospital. Indeed, the Connecticut Medical Society in 1914 submitted to the workers' compensation commissioners a recommendation that the legislature authorize private ward fees with additional charges for doctors' fees, which the commissioners included, without comment, in their annual report to the governor and general assembly. 1914 Conn. Public Documents vol. 1, pt. 2, doc. 15, p. 17. Various commissioners in their decisions also invited legislative action on this issue. See *Spencer* v. *New Haven Rendering Co.*, supra, I-233; *Schillinger* v. *Yale Brewing Co.*, supra, I-187.

This history indicates that the 1921 amendment to the Workers' Compensation Act, limiting hospital charges to the actual costs of the services provided, was probably added in order to prevent hospitals from being *under*compensated. This is in contrast to the other language in § 31-294 limiting employer liability for medi-

cal services to "such charges as prevail . . . when such treatment is paid for by the injured person,"[4] which apparently was intended to prevent doctors from increasing their fees when they discovered that the "deep pocket" of compensation insurance would pay the bill. *Covey* v. *Honiss Oyster House, Inc.,* 117 Conn. 282, 284, 167 A. 807 (1933); cf. *Christophson* v. *Turner Construction Co.,* supra, I-593.

The CRD's opinion in *Tanner* declared that since 1921, the commissioners met yearly to set the actual costs that a hospital might charge for services.[5] It explained, however, that after 1973, when the legislature established the hospital commission; Public Acts 1973, No. 73-117; the commissioners simply deferred to the fee schedule established by the hospital commission. Presumably, the commissioners interpreted the language in § 31-294, "such amount to be determined by the commissioner," as sufficiently broad to authorize deference to uniform rates set by the hospital commission.

The commissioners' practical application of the statute over the last seventy years provides a useful indication of its meaning. See *Board of Education* v. *State Board of Labor Relations,* 217 Conn. 110, 120, 584 A.2d 1172 (1991). The compensation commissioners had

[4] Prior to the 1921 amendment, General Statutes (Rev. to 1918) § 5347 provided: "The pecuniary liability of the employer for the medical and surgical service herein required shall be limited to such charges as prevail in the same community or similar communities for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person." This provision was retained after the 1921 amendment, which added the language establishing actual cost as the standard for hospital services.

[5] Commission reports indicate that in later years the commissioners met with hospital and insurance officials to try to reach agreement on uniform statewide hospital rates. See Reports of the Board of Compensation Commissioners, No. 18 (1946), p. 9; No. 17 (1944), pp. 8–9; No. 16 (1942), p. 8; No. 15 (1940), p. 9; No. 14 (1938), p. 10.

accepted the hospital commission rates after 1973 without objection for eleven years when the DRG Act became effective, raising the stakes by creating in some cases wide disparities between itemized charges and billed charges.

"We seek the intent of the legislature 'not in what it meant to say, but in what it did say.' *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 571, 512 A.2d 893 (1986)." *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 187, 592 A.2d 912 (1991). Whatever led to its enactment, the words of § 31-294 limit the employer's liability to the "amount it actually costs the hospital to render the service." The compensation commissioners could not assume that the hospital commission would consider the actual costs to the hospital as the only criterion for setting rates. Indeed, No. 73-117 of the 1973 Public Acts permitted the hospital commission to consider, in addition to "necessary expenses" of the hospital, the hospital's effectiveness, the quality of care, and the community's need for its services, as well as "any other factors [that] the commission deems relevant."[6]

---

[6] In 1973, the precursor to General Statutes § 19a-153 (a), as codified at General Statutes (Rev. to 1975) § 19-73k, provided: "CONSIDERATIONS RELATIVE TO RATE-INCREASE APPROVAL. In its deliberations under any of sections 19-73i to 19-73o, inclusive, the commission may take into consideration the necessary expenses of the institution or facility concerned, the effectiveness of its delivery of health care services, the quality of available health care, the duplication of service by institutions and facilities in the area served, the community or regional need for any particular function or service, and any other factors which the commission deems relevant."

In the same act that repealed General Statutes § 19a-165f, the DRG Act; see Public Acts 1989, No. 89-371; the legislature also amended § 19a-153 (a), which now provides as follows: "[General Statutes (Rev. to 1991)] Sec. 19a-153. (Formerly Sec. 19-73k). "CONSIDERATIONS IN COMMISSION DELIBERATIONS; WRITTEN FINDINGS. AVAILABILITY OF INFORMATION. USE OF CHARITABLE GIFTS. (a) In any of its deliberations involving a proposal, request or submission regarding rates or services by a health care facility or institution, the commission shall take into consideration and make written findings concerning each of the following principles and guidelines: The

We conclude, nevertheless, that the commissioners' deference to hospital commission rates was not only authorized, but required, by the legislature. In enacting No. 73-117 of the 1973 Public Acts, the legislature effectively preempted the entire field of hospital rate setting, including the portion previously occupied by the workers' compensation commissioners. Having authorized the hospital commission to determine all hospital rates, the legislature cannot have intended to continue requiring the compensation commissioners independently to establish the actual costs of the hospital for services rendered to injured workers as distinct from other persons.[7] The resulting two-tier system would also defeat the implicit purpose of § 31-294, namely, that fees for medical care of workers' compen-

relationship of the proposal, request or submission to the state health plan; the relationship of the proposal, request or submission to the applicant's long-range plan; the financial feasibility of the proposal, request or submission and its impact on the applicant's rates and financial condition; the impact of such proposal, request or submission on the interests of consumers of health care services and the payers for such services; the contribution of such proposal, request or submission to the quality, accessibility and cost-effectiveness of health care delivery in the region; whether there is a clear public need for any proposal or request; whether the health care facility or institution is competent to provide efficient and adequate service to the public in that such health care facility or institution is technically, financially and managerially expert and efficient; that rates be sufficient to allow the health care facility or institution to cover its reasonable capital and operating costs; the relationship of any proposed change to the applicant's current utilization statistics; the teaching and research responsibilities of the applicant; the special characteristics of the patient-physician mix of the applicant; the voluntary efforts of the applicant in improving productivity and containing costs; and any other factors which the commission deems relevant, including, in the case of a facility or institution as defined in subsection (c) of section 19a-490, such factors as, but not limited to, the business interests of all owners, partners, associates, incorporators, directors, sponsors, stockholders and operators and the personal backgrounds of such persons."

[7] Indeed, thirty years earlier the compensation commissioners had implored the legislature to "remove this burden" of setting hospital rates from the commissioners. Reports of the Board of Compensation Commissioners, No. 16 (1942) p. 8.

sation patients should be neither more, nor less, than those paid by the general paying public. We presume that the legislature intended a reasonable and rational result. See *Sanzone* v. *Board of Police Commissioners,* supra; *Zapata* v. *Burns,* 207 Conn. 496, 507–508, 542 A.2d 700 (1988). Thus, although we commonly disfavor repeal by implication; *Metropolitan District* v. *Barkhamsted,* 199 Conn. 294, 305, 507 A.2d 92 (1986); " '[s]o far as pre-existing provisions, by their repugnancy or inconsistency, stand in the way of the full and effective operation of the final expressed will of the legislature, they stand, in law, as *pro tanto* repealed. Not only is this true of those provisions which are on their face inconsistent with the Act, but of any others which upon examination and analysis are found to hamper or interfere with its workability.' *Connelly* v. *Bridgeport,* [104 Conn. 238, 253, 132 A. 690 (1926)]." *East Haven* v. *New Haven,* 159 Conn. 453, 469–70, 271 A.2d 110 (1970). We conclude that No. 73-117 of the 1973 Public Acts effectively repealed the "actual cost" language of § 31-294 and required compensation commissioners to defer to the hospital commission rates.

## II

In September, 1988, when the employee's hospital costs were incurred, the DRG statute provided, in pertinent part: "(a) For the rate year commencing in 1987, and for subsequent rate years, hospitals shall charge according to a fee schedule based on a standard fixed charge per case for all inpatient cases except cases in exempt units or cases classified as outliers . . . . *Such fee schedule shall be used for all payers* except for Medicare and for medical assistance provided pursuant to chapters 302 and 308."[8] (Emphasis added.) General

[8] General Statutes (Rev. to 1987) § 19a-165 (h), as amended by Public Acts 1987, No. 87-443, §§ 2, 17, defines "Outliers" as "(1) day outliers, which shall include all cases with a length of hospital stay which exceeds three times the average length of stay as determined by the commission; (2) charge

Statutes (Rev. to 1987) § 19a-165f (a), as amended by Public Acts 1987, Nos. 87-122, 87-443, § 5, and 87-510, § 3.

"Our task is to find the expressed intent of the legislature, 'that is, the intention of the legislative body "as found from the words employed to make it manifest." ' " *Sanzone* v. *Board of Police Commissioners,* supra, 186. "To determine the collectively expressed legislative intent, we look first to the language of the statute itself." Id., 187. The statutory language, "all payers," which was added in 1987, demonstrates that the legislature intended no exemption from hospital commission rates for workers' compensation cases.[9] Thus, according to the plain language of the DRG Act, employers and workers' compensation insurers were required to pay for hospital services at DRG rates.

A review of the legislative history, while not required, confirms our reading of the statute. "Legislative his-

outliers, which shall be cases not included within the definition of day outliers in which the itemized charges exceed by more than two and one-half times the fixed charge per case as determined by the commission; or (3) short stays which shall be inpatient cases involving hospital stays of two calendar days, or less, except for the fiscal year commencing in 1988, and subsequent fiscal years, the commission may modify the criteria for short stay outliers by regulations adopted pursuant to chapter 54."

General Statutes (Rev. to 1987) § 19a-165f (a) categorizes "psychiatric units and rehabilitation units of hospitals" as "exempt units" and authorizes the hospital commission to classify certain services as exempt. The parties have stipulated that the employee's case is not an "outlier" and that the services the hospital provided are not "exempt" in themselves or by virtue of being provided by an "exempt" unit.

[9] We note that in 1984, the DRG Act, as codified at General Statutes (Rev. to 1985) § 19a-165f (a), provided: "Separate fee schedules shall be used for the following payer categories: Medicare, medical assistance provided pursuant to chapters 302 and 308, *other third party payers.*" (Emphasis added.) The legislature removed this language in 1987. Public Acts 1987, Nos. 87-443, § 5, and 87-510, § 3. The statute never defined or otherwise referred to "other third party payers." This term would presumably include both private medical insurers and workers' compensation insurers, as well as self-insured employers. Thus, the legislature in 1984 continued to make no distinction between workers' compensation payers and other insurers.

tory" includes not only those discussions and circumstances that *led* to the enactment of the statute, but any subsequent legislative history that sheds light on the legislature's original intent. *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 541, 494 A.2d 555 (1985). Thus, "[a] clarifying act, which 'in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act.' " *State* v. *Blasko,* 202 Conn. 541, 557, 522 A.2d 753 (1987), quoting *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305 (1977).

The legislative history unquestionably indicates that §§ 3 and 19 of No. 88-357 of the 1988 Public Acts, which became effective on October 1, 1988, after the employee was injured and incurred hospital costs, were intended to clarify the ambiguity created when the legislature enacted General Statutes § 19a-165f (a) without explicitly repealing the conflicting provisions of § 31-294.[10] The statement of purpose contained in the

[10] "[Public Acts 1988, No. 88-357] Sec. 3. Subsection (a) of section 19a-165f of the general statutes, as amended by public act 87-122, section 5 of public act 87-443 and section 3 of public act 87-510 are repealed and the following is substituted in lieu thereof:

"(a) For the rate year commencing in 1987, and for subsequent rate years, hospitals shall charge according to a fee schedule based on a standard fixed charge per case for all inpatient cases except cases in exempt units or cases classified as outliers. [and the] THE patient shall be liable for payment on the basis of such schedule, EXCEPT THAT IN WORKERS' COMPENSATION CASES ALL CHARGES FOR HOSPITAL SERVICES RESULTING FROM EMPLOYMENT RELATED INJURIES OR DISEASES SHALL BE SOLELY THE RESPONSIBILITY OF THE EMPLOYER OR CARRIER, AND NO CLAIM SHALL BE MADE AGAINST THE INJURED EMPLOYEE FOR ALL OR PART OF A CHARGE. A hospital may not charge for inpatient cases not classified as outliers on other than a fixed charge per case unless otherwise authorized under sections 19a-165 to 19a-165q, inclusive, AS AMENDED BY PUBLIC ACTS 87-443 AND 87-510. Reimbursement on behalf of such inpatient cases shall be based on the fixed charge per case. Such fee schedule shall be used for all payers except for Medicare and for medical assistance provided pursuant to chapters 302 and 308 until such time as Medicare and medical assistance provided pursuant to chapters 302 and 308 pays on the

bill that later became No. 88-357 specifically states that it was in part intended "to clarify sections pertaining to . . . the payment of hospital costs by workers' compensation." Raised Committee Bill No. 387, p. 15. The office of legislative research analysis, incorporating the favorable report of the public health committee, states that the act would "make it clear that workers' compensation [program] payers [and governmental payers] must pay fixed charges" under the Prospective Pay-

basis of a standard fixed charge per case. For Medicare and medical assistance provided pursuant to chapters 302 and 308, each hospital shall establish its detailed charges in conformance with the standard fixed charge per case and the outlier charges established by the commission for the hospital's rate year. WORKERS' COMPENSATION PAYERS SHALL PAY FOR HOSPITAL SERVICES AS PROVIDED IN SECTION 31-294, AS AMENDED BY SECTION 19 OF THIS ACT."

"Sec. 19. Section 31-294 of the general statutes, as amended by public act 87-160, is repealed and the following is substituted in lieu thereof . . .

"The pecuniary liability of the employer for the medical and surgical service herein required shall be limited to such charges as prevail in the same community or similar communities for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person; but the liability of the employer for hospital service shall be the amount it actually costs the hospital to render the service, such amount to be determined by the commissioner except (1) IN CASES FOR WHICH A STANDARD FIXED CHARGE PER CASE HAS BEEN ESTABLISHED PURSUANT TO SUBSECTION (a) OF SECTION 19a-165f, AS AMENDED BY PUBLIC ACT 87-122, SECTION 5 OF PUBLIC ACT 87-443, SECTION 3 OF PUBLIC ACT 87-510 AND SECTION 3 OF THIS ACT, LIABILITY SHALL BE THE AMOUNT CHARGED BY THE HOSPITAL USING A FEE SCHEDULE BASED ON SUCH FIXED CHARGE PER CASE AND (2) in the case of state humane institutions, in which case the liability of the employer shall be the per capita cost as determined by the comptroller under the provisions of section 17-295. ALL DISPUTES CONCERNING LIABILITY FOR HOSPITAL SERVICES IN WORKERS' COMPENSATION CASES SHALL BE SETTLED BY THE WORKERS' COMPENSATION COMMISSIONER IN ACCORDANCE WITH THIS CHAPTER."

The legislative history also indicates that the legislature intended to indicate formal approval of the commission's regulation prohibiting hospitals from seeking any payment from injured workers. Regs., Conn. State Agencies § 31-279-9 (e). See testimony of John Arcudi, Conn. Joint Standing Committee Hearings, Public Health, 1988 Sess., p. 165.

ment System. OLR Amended Bill Analysis, p. 100. Representative Paul Gionfriddo, explaining the purpose of Senate Amendment "A," which became part of the act, stated: "[T]his amendment . . . clarif[ies] that under the terms of the prospective payment system that we have in place that workers' compensation carriers are third party carriers or payers and are to be treated as such, as was originally intended in the statute, so it is clarifying in nature." 31 H.R. Proc., Pt. 24, 1988 Sess., pp. 8329–30. Statements of purpose, committee reports, and floor debate are all legitimate sources of legislative intent. See, e.g., *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 391 n.5, 446 A.2d 1059 (1982) (floor debate); *Tax Commissioner* v. *Estate of Bissell,* supra, 244–45 (statement of purpose); *Connecticut Rural Roads Improvement Assn.* v. *Hurley,* 124 Conn. 20, 26, 197 A. 90 (1938) (committee reports).

It is rare to find such plentiful evidence of the legislature's intent to clarify an earlier statute.[11] We have no difficulty, therefore, in concluding that the legislature originally intended no exemption for employers or workers' compensation insurance carriers from the provisions of the DRG Act.

Having established the meaning of § 19a-165f (a), we return to § 31-294. Section 19a-165f (a) of the DRG Act, as a subsequent enactment, must control over the conflicting terms of § 31-294, as modified by Public Acts 1973, No. 73-117. See *Plourde* v. *Liburdi,* 207 Conn. 412, 417, 540 A.2d 1054 (1988); *Keogh* v. *Bridgeport,* 187 Conn. 53, 65, 444 A.2d 225 (1982). We therefore

---

[11] The employer attempts to argue that the legislature cannot have been "clarifying" the term "actual cost" contained in General Statutes § 31-294, because that language was added in *1921.* We need not consider whether the legislature has the power to make dispositive declarations concerning the intentions expressed by long-dead legislators, because § 3 of No. 88-357 of the 1988 Public Acts specifically clarified General Statutes § *19a-165f (a),* which was enacted in 1984, only a few terms earlier.

conclude that the DRG Act further modified § 31-294 to require an employer to pay the DRG rate established by the hospital commission even though that rate is based upon a hospital's average cost per diagnosis instead of the costs of providing service to a particular patient.[12]

The judgment is affirmed.

In this opinion the other justices concurred.

[12] Now that the DRG Act has been repealed, General Statutes § 31-294, implicitly modified by No. 73-117 of the 1973 Public Acts, returns to its pre-DRG meaning.