**Raymond E. FENTON, Administrator of Estate of Thomas J. Fenton, and Susan Woodrow, Executrix of Estate of Loren Woodrow**

v.

**UNITED TECHNOLOGIES CORP. d/b/a/Sikorsky Aircraft Corp., Alcoa Inc., and Alcoa Composites Inc. d/b/a/ Fibertek**

No. 3:01 CV 1259(SRU).

United States District Court,
D. Connecticut.

May 31, 2002.

Jonathan Katz, Trisha Morris Porto, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, Windle Turley, Thomas B. Cowart, Dallas, TX, for Plaintiffs.

Richard J. Kenny, Alexander J. Chotkowski, Rome McGuigan Sabanosh, Hartford, CT, Shaun S. Sullivan, Timothy Andrew Diemand, Wiggin & Dana, New Haven, CT, William J. Kelleher, III, Wiggin & Dana, Stamford, CT, for Defendants.

### RULING ON MOTIONS TO DISMISS

UNDERHILL, District Judge.

On July 8, 1997, Thomas Fenton and Loren Woodrow ("decedents") died in a

---

helicopter crash. On July 3, 2001, Raymond Fenton, Administrator of Thomas Fenton's estate, and Sandra Woodrow, executor of Loren Woodrow's estate, sued the manufacturer of the helicopter, United Technologies Corporation d/b/a/Sikorsky Aircraft Corporation ("UTC"), and the manufacturer of the helicopter's external fuel tanks, Alcoa Inc., and Alcoa Composites Inc. d/b/a/ Fibertek (collectively "Alcoa") under Connecticut's Product Liability Statute, Conn. Gen.Stat. § 52–572m, et seq. UTC and Alcoa each moved to dismiss the entire case on the ground that plaintiffs filed the action outside the applicable statute of limitations. On November 9, 2001, the court heard oral argument on those motions.

This action was filed beyond the three-year statute of limitations applicable in product liability actions, Conn. Gen.Stat. § 52–577a. Plaintiffs contend, however, that under the circumstances of this case, Conn. Gen.Stat. § 52–594 extends the statute of limitations set forth in section 52–577a for an additional year. The court disagrees, based on a plain reading of section 52–594, accepted principles of statutory construction, legislative history and Connecticut case law. Accordingly, because the action is time-barred, defendants' motions to dismiss (doc. ## 9, 12) are granted.

## I. BACKGROUND

The applicable statute of limitations, Conn. Gen.Stat. § 52–577a, affords the plaintiffs three years from July 8, 1997 to timely file this action.[1] *See* Conn. Gen. Stat. §§ 52–572m(b) and (d); 52–572n(a);

see also *Shuckra v. BIC Corp.*, 2001 WL 206109, at *1 (Conn.Super.2001) (section 52–577n(a) provides exclusive remedy for personal injury caused by defective products) (citing *Winslow v. Lewis–Shepard, Inc.*, 212 Conn. 462, 471, 562 A.2d 517 (1989)); *West Haven School District v. Owens–Corning Fiberglas Corp.*, 721 F.Supp. 1547, 1552–53 (D.Conn.1988) ("Product liability actions in Connecticut are generally subject to the three-year statute of limitation provided in Conn. Gen.Stat. § 52–577a."); *Manson v. Mr. Coffee, Inc.*, 1995 WL 684871, at *3 (Conn.Super.1995) ("Connecticut caselaw has recognized the applicability of the Product Liability Act where the use of a defective product results in the wrongful death of a decedent") (citing *Champagne v. Raybestos–Manhattan, Inc.*, 212 Conn. 509, 562 A.2d 1100 (1989); *Sanderson v. Steve Snyder Enterprises, Inc.*, 196 Conn. 134, 491 A.2d 389 (1985)).

Moreover, the parties do not dispute that, unless extended, the three-year limitations period under section 52–577a ran on July 8, 2000. Accordingly, all parties agree that the dispositive issue is whether section 52–594 extends the statute of limitations in this case for one year until July 8, 2001.

## II. STANDARD OF REVIEW

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must construe any well pleaded factual allegations in the plaintiffs' favor. *See Albright v. Oliver*, 510 U.S. 266, 268, 114

---

1. Conn. Gen.Stat. § 52–577a provides in pertinent part:

(a) No product liability claim as defined in section 52–572m shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered except that, subject to subsections (c), (d) and (e), no such action may be brought against any party nor may any party be impleaded pursuant to subsection (b) later than ten years from the date that the party last parted with possession or control of the product.

S.Ct. 807, 127 L.Ed.2d 114 (1994); *Boyd v. Nationwide Mut. Insurance Co.*, 208 F.3d 406, 409 (2d Cir.2000). In addition, the court must draw all reasonable inferences in the plaintiffs' favor. *See County of Suffolk, New York v. First American Real Estate Solutions*, 261 F.3d 179 (2d Cir. 2001). Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Kittay v. Kornstein*, 230 F.3d 531, 537 (2d Cir.2000). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683).

In deciding such a motion, a district court must "limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999).

## III. DISCUSSION

The defendants argue that in cases "where the death occurs before the statute of limitations expires, an estate's representative can bring suit either within one year from the date of such death under section 52–594 or within the remaining time left on the underlying statute of limitations." Defendants claim that the plain language of section 52–594 [2] only allows one-year from the date of death within which to initiate suit. Defendants, therefore, reason that, if a plaintiff's decedent dies with more than one year remaining on the underlying statute of limitations, section 52–594 could shorten the time to file a claim. Shortening the statute of limitations, defendants assert, runs counter to legislative intent. According to the defendants, it logically follows that section 52–594 only operates to add one year to the underlying statute of limitations when the plaintiff's decedent dies with less than one year remaining on that statute of limitations. Such a reading of section 52–594, defendants contend, best effectuates the legislative intent to allow the executor additional time to initiate a case if the underlying statute of limitations would expire in less than one year from the date of death.[3]

Here, decedents died on July 8, 1997, undisputedly the same day that their product liability cause of action accrued. Thus, the section 52–577a statute of limitations began to run on that day. One year from the date of the decedents' death was July 8, 1998. At that time, plaintiffs had two years remaining on the section 52–577a statute of limitations. Defendants argue that, because section 52–594 only allows an executor one year from the date of the decedents' deaths to bring suit, section 52–594 does not apply in this case. Defendants further claim that, because the underlying three-year statute of limitations

---

**2.** Section 52–594 provides:

*Limit for executor or administrator to bring personal action that survives.* If the time limited for the commencement of any personal action, which by law survives to the representatives of a deceased person, has not elapsed at the time of the person's death, one year from the date of death shall be allowed to his executor or administrator to institute an action therefor. In computing the times limited in this chapter, one year shall be excluded from the computation in actions covered by the provisions of this section.

**3.** The defendants argue that the 1982 amendment did not substantively change section 52–594. They therefore support their interpretation of section 52–594 with Connecticut caselaw that interprets earlier versions of section 52–594.

had expired prior to the filing of the complaint, this action is time-barred.

Plaintiffs, on the other hand, argue that section 52–594 "operates to add one additional year to the product liability statute of limitations for injuries resulting in death." In reaching that conclusion, plaintiffs agree that the first sentence of section 52–594 allows an executor only one year from the date of death to bring suit. Plaintiffs argue, however, that the second sentence, which they claim alone governs their claim, does not contain the limitation of one year from the date of death.

The plaintiffs rely on the historical development of section 52–594 to support their position. The current version of section 52–594 was last amended in 1982. That amendment rewrote the 1949 version. The 1949 version of section 52–594 provided:

In any case in which the time limited for the commencement of any personal action, which by law survives to the representatives of a deceased person, has not elapsed at the time of his decease, the term of one year from the time of such decease shall be allowed to his executor or administrator to institute a suit therefor; and, in computing the times limited in this chapter, in the cases aforesaid, such term shall be excluded from the computation.

Conn. Gen.Stat. § 52–594 (1949).

The 1949 version of section 52–594 was derived from earlier sections 6027 (the "1930 version"), 6174 (the "1918 version"), and 1128 (the "1902 version"). The language in those three earlier sections is identical to the language in the 1949 version, with the exception that the second word "all" in sections 1128 and 6174 changed to "any" in the 1930 and 1949 versions. The 1982 amendment changed some of the wording in the 1949 version of section 52–594 and placed a period where all earlier versions had a semi-colon, there-

by turning the single sentence of the 1949 and earlier versions of section 52–594 into two sentences.

Plaintiffs reason that, because the 1982 amendment separated the text into two sentences, the second sentence of section 52–594 must be read to operate independently of the first sentence. Plaintiffs claim that the second sentence, unlike the first sentence, applies exclusively to those actions subject to the statute of limitations set forth in Chapter 926. Specifically, plaintiffs state that the second sentence "applies only to statutes of limitations set by a provision of Chapter 926 of the Connecticut General Statutes, as demonstrated by its reference to 'the times limited in this chapter.'" In addition, plaintiffs claim that the second sentence "tolled the statutes of limitations for one year, per the provision that 'one year shall be excluded from the computation,'" of the running of the underlying statute of limitations.

In essence, plaintiffs argue that, under a plain reading of the second sentence, section 52–594 extends by one additional year all statutes of limitations set forth in Chapter 926 in any case in which the plaintiff's decedent has died, regardless of the date of death. According to the plaintiffs, whenever a decedent dies with time remaining on the underlying statute of limitations, in this case 52–577a, one year from the date of death is automatically excluded from the total limitations period when calculating the date by which suit must be initiated. Thus, according to plaintiffs, when a plaintiff's decedent dies at any time within three years of the accrual of a product liability claim, section 52–594 automatically extends section 577a's three-year statute of limitations to four years.

**Statutory Construction**

The interpretation of section 52–594 is a state law question governed by Connecticut caselaw. *Bensmiller v. E.I. Dupont de*

*Nemours,* 47 F.3d 79, 82 (2d Cir.1995). The Connecticut Supreme Court has not yet directly addressed the interpretation of the current version of section 52–594 as it relates to the facts of this case. Therefore, this court must "carefully ... predict how the highest court of the forum state would resolve the uncertainty...." *Travelers Ins. Co. v. 633 Third Assocs.,* 14 F.3d 114, 119 (2d Cir.1994); *accord Gibbs–Alfano v. Burton,* 281 F.3d 12, 17–18 (2d Cir. 2002); *Plummer v. Lederle Labs., Div. of Am. Cyanamid Co.,* 819 F.2d 349, 355 (2d Cir.), *cert. denied,* 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987) ("A federal court sitting in diversity must follow the law directed by the Supreme Court of the state whose law is found to be applicable, and if there is no direct decision by the highest court of that state, the federal court should determine what it believes that state's highest court would find if the issue were before it.") (citing *Meredith v. Winter Haven,* 320 U.S. 228, 234–37, 64 S.Ct. 7, 88 L.Ed. 9 (1943)).

In predicting how the Connecticut Supreme Court would interpret section 52–594, this court must carefully review all the resources that would be available to the state's highest court, including "the statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional law, federal cases which construe the state statute, scholarly works and any other reliable data tending to indicate how [the Connecticut Supreme Court] would resolve the [issue]." *Travelers,* 14 F.3d at 119 (second brackets in originals) (citations omitted). The court should also consider the dicta in relevant court opinions. *See Newburgh Land & Dock Co. v. Texas Co.,* 227 F.2d 732, 735 (2d Cir.1955); *Kline v. E.I. DuPont de Nemours & Co., Inc.,* 15 F.Supp.2d 299, 302–03 (W.D.N.Y.1998).

Thus, the court will construe section 52–594 according to Connecticut's well established rules concerning statutory interpretation. In Connecticut, the "fundamental objective [of statutory construction] is to ascertain and give effect to the apparent intent of the legislature." *State v. Gibbs,* 254 Conn. 578, 601, 758 A.2d 327 (2000) (citations omitted); *see also Caraglior v. World Savings & Loan,* 251 B.R. 778, 782 (Bkrtcy.D.Conn.2000) (citations omitted).

In this quest, the "starting point must be the language employed by the legislature." *King v. Board of Education of Watertown,* 203 Conn. 324, 332, 524 A.2d 1131 (1987) (citations omitted); *see also Caraglior,* 251 B.R. at 782 (legislative "intent is determined initially by reference to the words of the statute") (citing *Lunn v. Cummings & Lockwood,* 56 Conn.App. 363, 371–72, 743 A.2d 653 (2000)). "[W]hen the words of a statute are plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature." *Caltabiano v. Planning and Zoning Comm'n of the Town of Salem,* 211 Conn. 662, 666, 560 A.2d 975 (1989) (citations omitted); *see also Conn. Light & Power Co. v. Texas–Ohio Power, Inc.,* 243 Conn. 635, 656, 708 A.2d 202 (1998); *Caraglior,* 251 B.R. at 782 ("When the language of the statute is clear and unmistakable, construction is prohibited and legislative intent is conclusively established by the statute's plain meaning.") (citations omitted).

When, however, the words of a statute are ambiguous, the court seeks to "ascertain the actual intent by looking to the words of the statute itself; the legislative history and circumstances surrounding the enactment of the statute; and the purpose the statute is to serve." *Caltabiano,* 211 Conn. at 666, 560 A.2d 975 (internal citations omitted); *see also Willoughby v. New*

*Haven,* 254 Conn. 404, 410, 757 A.2d 1083 (2000) ("look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . .") (citations omitted).

### Analysis

Although the Connecticut Supreme Court has decided the meaning and application of the earlier versions of section 52–594, the Court has not yet interpreted the current version of section 52–594. The statute's current version is not plain and unambiguous on its face. Neither the plaintiffs' reading nor the defendants' reading is plainly correct. Nor is there a third reading of the statute that reflects plainly the intent of the legislature. Therefore, it is necessary to look for interpretative guidance not only from the words of the statute, but also from principles of statutory construction, the legislative history, and the purpose of the statute.

#### *Language of the Statute*

The 1982 amendment to section 52–594 split the original one-sentence section into two separate sentences. The crux of plaintiffs' argument is that the amendment was substantive, that the two sentences consequently operate independently of each other, and that the second sentence alone governs the issue in this case.

Looking at the plain language of section 52–594, the first sentence clearly sets forth that, for any personal action that survives to the representative of a deceased person, section 52–594 applies only when the injured party dies with time remaining on the underlying statute of limitations. If that condition is satisfied, then, under a plain reading, section 52–594 allows for a one-year period within which the executor or administrator can file a suit. Moreover,

a plain reading dictates that the one-year period is calculated only from the date of death. Under a plain reading of the second sentence of section 52–594, one year shall be excluded from the computation of statutes of limitations set forth in Chapter 926 "in actions covered by the provisions of this section."

Read in isolation, the legislature's division of the single sentence into two could indicate the legislature's intent to separate the substance of those two sentences, and possibly to cause them to have independent effect. The language "in actions covered by the provisions of this section," however, on its face, indicates that "this section" refers to "section 52–594." Section 52–594 obviously includes both sentences. Interpreting "this section" to mean "section 52–594" undermines plaintiffs' contention that the two sentences operate independently. This reading is bolstered by the fact that the language at issue is found within the Connecticut General Statutes, which typically refer to statutory subparts, including section 52–594, as sections. *See Martone v. Lensink,* 207 Conn. 296, 302, 541 A.2d 488 (1988) (words of a statute "are to be given their commonly approved meaning, unless a contrary intent is clearly expressed.") (citations and internal quotation marks omitted).

Therefore, under the better reading of the statute, the two sentences do not operate independently. Reading the statute in its entirety suggests that section 52–594 applies only to those actions that meet the conditions set by the first sentence of the statute. *See Martone,* 207 Conn. at 302, 541 A.2d 488 ("In statutory construction, we endeavor, moreover, to read the statute as a whole and so as to reconcile all parts as far as possible.") (internal quotation marks and citation omitted); *Summit Hydropower Partnership v. Commissioner of Environmental Protection,* 226 Conn. 792,

808, 629 A.2d 367 (1993) ("Legislative intent is not to be found in an isolated phrase or sentence.") (citation omitted).

The legislature could have more clearly provided in the first sentence that the statute applies only if the applicable statute of limitations would expire within one year of the decedent's death. Even doing so, however, would not render the second sentence wholly superfluous. The second sentence, though somewhat ambiguous and possibly redundant, further clarifies that the exclusion of one year from the underlying statute of limitations applies only to statutes of limitations found in Chapter 926[4] and only to those cases that are covered by the provisions of section 52–594.[5] *See Hartford Hospital v. Dept. of Consumer Protection*, 243 Conn. 709, 718, 707 A.2d 713 (1998) ("It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions.... [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous.") (internal quotation marks omitted; citations omitted).

A plain reading of section 52–594 does not provide an entirely clear and satisfactory reflection of the legislature's intent when enacting the statute. The best reading of the statute, however, suggests that the 1982 amendment did not effect any substantive change in the section's meaning.[6] That reading is confirmed by the

results of other methods of statutory construction.

*Legislative History*

The principal change made by the 1982 amendment to section 52–594 was to substitute a period for a semi-colon, thereby splitting a single sentence into two sentences. Plaintiffs do not cite to any legislative history to show that the legislature intended the 1982 amendment to section 52–594 to substantively change the earlier version. *See Rivera v. Commissioner of Correction*, 254 Conn. 214, 242, 756 A.2d 1264 (2000) ("[T]here is a presumption that an amendatory act does not change the existing law further than is expressly declared or necessarily implied.") (internal quotation marks and citation omitted). To the contrary, the statements of legislators made when considering the 1982 amendment to section 52–594, do not indicate that those changes to section 52–594 were anything other than technical. *See* Joint Reply in Support of Defendants' Motions to Dismiss Plaintiffs' Complaint, Exh. A (excerpts from 1982 transcripts from the Connecticut House of Representatives and Senate concerning the 1982 amendment to section 52–594). *See also Doe v. Bridgeport Police Dep't*, 198 F.R.D. 325, 340 (D.Conn.2001) ("[T]he Connecticut Supreme Court has observed that '[s]tatements of legislators often provide strong indication of legislative intent.'") (quoting *Lynn v. Haybuster Mfg., Inc.*, 226 Conn. 282, 292, 627 A.2d 1288 (1993) (brackets in

---

**4.** Section 52–577a is included in Chapter 926, along with approximately thirty other statutes of limitations.

**5.** Plaintiffs argue that "covered by the provisions of this section" modifies the words "cover any suit in which a claim is made by a decedent's representative for a personal action which survives death in which the statute of limitations has not run at the time of death." It defies not only accepted principles of statutory construction, but logic, to argue

that the second sentence must be read to operate independently of the first, yet refer back to the first, and then only selectively, when interpreting the second.

**6.** It is also evident, and not in dispute, that the one-sentence earlier versions of section 52–594 applied only to Chapter 926 statute of limitations. Plaintiffs concede that the earlier versions of section 52–594 would not operate to extend the statute of limitations in this case.

original)); *Burge v. Stonington*, 219 Conn. 581, 594, 594 A.2d 945 (1991) ("Statements of purpose, committee reports, and floor debate are all legitimate sources of legislative intent.").

Therefore, based on the minor difference in the language of the two versions of the statute and the legislative history surrounding the 1982 amendment, it is clear that the legislature did not intend the 1982 amendment to effect a substantive change in section 52–594. Thus, the legislative intent in enacting the earlier versions of section 52–594 controls the interpretation of the current version. Because neither party has provided any legislative history to explain the relevant language of any version of section 52–594, the court will rely on Connecticut state court opinions interpreting the earlier versions of section 52–594 to help interpret the current version.

### *Purpose of section 52–594—Connecticut Caselaw*

In those cases in which there is more than one year left on the underlying statute of limitations when the decedent dies, strict application of the provision of section 52–594 allowing one year from the date of death to bring an action would serve to shorten the statute of limitations. The Connecticut Supreme Court has held that the legislature clearly did not intend that result. *See Warkentin v. Burns*, 223 Conn. 14, 22, 610 A.2d 1287 (1992) ("Section 52–594, by its express language, extends the time limitation for instituting a lawsuit."); *Leahy v. Cheney*, 90 Conn. 611, 612, 98 A. 132 (1916) ("Section 1128 [the 1902 predecessor statute of section 52–594] was not intended to shorten the statutory time in the cases referred to, but to extend it.").

In fact, the Connecticut Supreme court has held that the purpose of the statutory provision that became section 52–594 is

> to extend [the statutory time] in such cases, where otherwise it would expire in less than a year after the death, so that the decedent's representatives may have a full year in which to take out administration, learn of the existence of the claim, and bring suit. The executor or administrator has all the time which the decedent, if living, would have within which to bring the action; but, if less than a year remained to the decedent, his representative has a full year.

*Leahy*, 90 Conn. at 612, 98 A. 132 (interpreting section 1128). *See Warkentin*, 223 Conn. at 20, 610 A.2d 1287 ("We can best reach the meaning here, as always, by recourse to the underlying purpose of the statutory provision.") (internal quotation marks and citations omitted).

There is nothing to suggest that the legislature sought to change the fundamental purpose of section 52–594 when it amended the statute in 1982. Thus, the established purpose of the statute is consistent with defendants' suggested interpretation. *See, e.g., Girard v. Weiss*, 43 Conn.App. 397, 418, 682 A.2d 1078 (1996) (applying section 52–594 to extend the time to file only up to one year from date of death).

Plaintiffs rely on *Slater v. Mount Sinai Hospital*, 1997 WL 345349 (1997), and fairly so. *Slater*, a Connecticut Superior Court decision, does support plaintiffs' position. In *Slater*, a child was stillborn on September 5, 1992. The statute of limitations governing wrongful death of the stillborn child—Conn. Gen.Stat. § 52–555—required the complaint to be served[7] no more than two years after the death, i.e., before September 5, 1994. The complaint

---

**7.** Actions are commenced in Connecticut state court upon service of process.

was served on September 13, 1994. The Court relied upon the second sentence of section 52–594 to exclude one year from the two-year limitations period, without regard to the date of the decedent's death, and extended to three years the time to file. Based on its interpretation of section 52–594, the *Slater* court held that the action was timely filed.

There are a number of problems with the *Slater* decision. First, Conn. Gen.Stat. § 52–555 is in Chapter 925, not Chapter 926. Section 52–594 expressly applies only to those limitations periods in Chapter 926. Conn. Gen.Stat. § 52–594 ("In computing the times limited in this chapter ...."). Second, *Slater* does not discuss the intent of the legislature in enacting section 52–594, either through the plain words of the statute or the legislative history or caselaw. Finally, *Slater*'s reasoning is contrary to Connecticut Supreme Court decisions interpreting the earlier versions of section 52–594.

This court need not follow *Slater* because it is a Superior Court decision. In the face of the statutory language of section 52–594 and its earlier versions, accepted principles of statutory construction, and contrary Connecticut Supreme Court decisions interpreting section 52–594, *Slater* seems wrongly decided. *See Gibbs–Alfano v. Burton*, 281 F.3d 12, 17–18 (2d Cir.2002) (In predicting how the state's highest court would resolve the uncertainty or ambiguity, the court gives "the 'fullest weight' to pronouncements of the state's highest court, while giving 'proper regard' to relevant rulings of the state's lower courts.") (citations omitted). Accordingly, this court will not follow *Slater*.

## IV. CONCLUSION

Because decedents' deaths occurred when more than one year remained on the statute of limitations under section 52–577a, section 52–594 does not apply. In addition, because the three-year statute of limitations in section 52–577a ran before plaintiffs filed this action, their claims are time-barred.

For the foregoing reasons, defendants' motions to dismiss **(doc. ## 9, 12)** are **GRANTED**. The clerk is instructed to close the file.

It is so ordered.